## EDISON v. ALLIS CHALMERS CO. et al.

(Circuit Court, W. D. New York. June 6, 1911.)

### No. 383.

1. PATENTS (§ 288*)—SUIT FOR INFRINGEMENT—JURISDICTION OF DEFENDANTS.
    Where one of two nonresident defendants, each of whom had an established place of business in the district of suit, had, prior to such suit, constructed an infringing machine for the other, and assisted the latter in installing the same for use by a third defendant within the district, there was such a completed act of infringement, or threatened infringement, by each defendant within the district, as to give the court jurisdiction.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 460–466; Dec. Dig. § 288.*
    Jurisdiction of federal courts in suits relating to patents, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. PATENTS (§ 311*)—SUIT FOR INFRINGEMENT—ISSUES.
Complainant in an infringement suit is not entitled to prove and recover for an entirely separate and distinct act of infringement committed in another district since commencement of the suit by one of a number of defendants sued jointly.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 541, 542; Dec. Dig. § 311.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ROCK CRUSHER.
The Edison patents, Nos. 672,616 and 672,617, for a method and apparatus for breaking rock by kinetic energy by means of two massive iron rolls having irregular surfaces and slipping power connection, by which they are independently rotated toward each other until they acquire a high momentum, the charges of rock being delivered at intervals and sledged, broken, and crushed by the knobs on the surfaces of the rolls, were not anticipated and disclose invention of high order and merit. Such patents also held valid against the claim of prior public use, and the method patent and claims 1, 2, 3, 4, and 7 of the apparatus patent infringed. Claims 5 and 6 held not infringed.

4. PATENTS (§ 75*)—PRIOR PUBLIC USE—WHAT CONSTITUTES.
An experimental use of an uncompleted machine, even though third persons are permitted to witness its operation, is not a public use which will defeat a patent for the completed invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 93–97; Dec. Dig. § 75.*

Priority and continuance of public use of invention as affecting patentability, see note to Eastman v. Mayor, etc., of City of New York, 69 C. C. A. 646.]

In Equity. Suit by Thomas A. Edison against the Allis-Chalmers Company, Empire Limestone Company, and the Casparis Stone Company. On final hearing. Decree for complainant.

Louis Hicks, for complainant.

Edwards, Sager & Wooster, Thomas F. Sheridan, and George L. Wilkinson, for defendants.

HAZEL, District Judge. This is a bill in equity based on two. letters patent granted on April 23, 1901, to Thomas A. Edison, for method of breaking rock and for apparatus for breaking rock, numbered respectively, 672,616 and 672,617. The method patent was issued on application dated July 6, 1897, and the apparatus patent on divisional application dated August 9, 1900. The defendants are charged in the bill with joint infringement of the patents in this district. The answers allege invalidity of the patents because of prior public use and sale more than two years before they were granted and want of novelty and noninfringement. At the hearing the jurisdiction of the court was challenged on the ground that a completed act of infringement prior to the commencement of the action was not proven. This objection will now be considered.

[1] The Empire Limestone Company is an inhabitant of the Western district of New York, and the Allis-Chalmers Company and the Casparis Stone Company inhabitants of the states of New Jersey and Ohio, respectively. It is claimed that the Allis-Chalmers Company and the Casparis Stone Company have not committed any act of in-

fringement here. Pursuant to the Act of March 3, 1897, c. 395, 29 Stat. 695 (U. S. Comp. St. 1901, p. 589), a defendant, not an inhabitant of the district where a suit is instituted, must affirmatively be shown to have committed an act of infringement and have a regularly established place of business therein. That the Allis-Chalmers Company and the Casparis Stone Company each has an established place of business in this jurisdiction is admitted, and the question submitted for decision on this phase is whether they have manufactured, used, or sold the infringing machine within this district, or entered into contracts for such use, manufacture, or sale. The stipulations of record relating to this subject fairly show that the infringing apparatus was completed and installed within this district prior to June 18, 1909, and before this action was commenced, and that the Allis-Chalmers Company contracted to sell and deliver such machine to the Casparis Stone Company within said district, which company had agreed to erect such machinery for the Empire Limestone Company at Pekin, N. Y. It is proven that the Allis-Chalmers Company in the latter part of the year 1908 assisted in the erection of the rollers by inspecting and approving the work of installation by the Casparis Stone Company. Accordingly, it is fairly shown that there was something more than the mere manufacture of the apparatus by the Allis-Chalmers Company within this district; there was a delivery and acceptance and approval of the work of installation and sale within the jurisdiction of this court. National Cash Register Co. v. American Cash Register Co., 178 Fed. 79-83, 101 C. C. A. 569. It is claimed as to the Empire Limestone Company that the plant was not in actual operation at the time the bill was filed; but this, assuming it to be true, is immaterial in view of the fact that prior thereto said company threatened to infringe the patents in suit. Chester Forging & E. Co. v. Tindel-Morris Co., 165 Fed. 899, 91 C. C. A. 577.

[2] Another question may here be decided before passing to the merits. The complainant gave testimony in rebuttal tending to establish that the Allis-Chalmers Company had installed an alleged infringing apparatus at Detroit, Mich., subsequent to the commencement of this action, and complainant claims to have the right to recover herein for such infringement. This claim is thought untenable. How a separate and wholly independent infringement in another district by one of the three defendants who are jointly charged with infringement has any relevancy in this action is difficult to understand, and such testimony, in the absence of controlling authority requiring its consideration, will be disregarded.

[3] Proceeding to a description of the patents and claims in suit, both of which are so closely allied that a consideration of one necessarily includes the other: As indicated by their titles both patents relate to crushing or breaking rock and ore, and in its accomplishment two massive revolving rolls, weighing 167,000 pounds, six feet in diameter and five feet long and secured to a shaft, are used. The mandrels are provided with extraordinarily heavy plates, which have on their outer surfaces large projections or sledging knobs. The

rolls are mounted side by side on a frame having a gap between them. The frame has pulleys attached, around which runs a driving belt, so arranged as to cause the rolls to revolve toward each other and downward through the gap or space between them. The pulleys are yieldingly connected to the shaft by means of slipping friction clutches, so that when the rolls revolve the friction clutches yield or slip without greatly lessening their speed. The rolls are separately and independently driven; the friction clutches being separate and disconnected to permit the rolls to diminish or accelerate their speed independently of one another. Mr. Edison's object was to devise a method by which massive rock or boulder when taken from its bed could be instantaneously crushed or broken to pieces at the least possible expense by the blows of large projections on the rollers, and thus to eliminate the hand sledging or blasting of the prior art. To accomplish his object it was necessary that the rollers correspond in weight and strength to the size of the material to be broken up. He believed it possible to use the energy and force generated by the inertia of revolving objects. The problem was how to apply such energy to assist in the crushing operation. Kinetic energy is the term by which such force and power is technically known. The skilled engineer knew that a heavy rotating object contained stored power and energy component with it, and in the adaptation of such force and power for breaking and crushing large rock it will be comprehended that, if such energy could be practically used, an achievement of great economic value and benefit in this art would result. It was necessary to design and construct machinery and rollers of a peculiar kind, together with facilities for placing and using them in accordance with the modus operandi specified in the patent in suit. The patentee surmounted all obstacles, and the record shows there were many. He was the first to evolve a crusher by which kinetic energy became a potential factor in the method of crushing and breaking rock by blows from the knobs on the rollers. It scarcely can be doubted that his inventions are meritorious and involve in their origination and perfection patentable skill of a high order.

The claims of the method patent read as follows:

"1. The method of breaking rock consisting in causing two independently-driven and disconnected massive bodies to travel toward each other at a high speed, partially arresting the motion of such bodies by successively and periodically introducing charges of rock between them, thereby breaking the rock by kinetic energy, and restoring the speed of such bodies during the intervals, substantially as set forth.

"2. The method of breaking rock consisting in driving a pair of independently-driven and disconnected massive rolls at a high speed by means of a small power capable of running the rolls up to speed when no work is being done, partially arresting the motion of the rolls by successively and periodically delivering charges of rock to them, thereby breaking the rock by kinetic energy and restoring the speed of the rolls during the intervals, substantially as set forth."

The claims of the apparatus patent which are involved, except the fifth and sixth, read:

"1. In apparatus for breaking rock by kinetic energy, the combination of a pair of independently-driven and disconnected massive rolls having rough-

ened or irregular surfaces, a power connection delivering power to both the rolls insufficient to break the rock by the direct application of the power, and means for periodically delivering charges of rock to such rolls at sufficiently infrequent intervals to permit the rolls to recover sufficient speed to effect the successively breaking operations, substantially as set forth.

"2. In apparatus for breaking rock by kinetic energy, the combination of a pair of independently-driven and disconnected massive rolls having roughened or irregular surfaces, a power connection delivering power to both the rolls insufficient to start the rolls from a state of rest, and means for periodically delivering charges of rock to such rolls at sufficiently infrequent intervals to permit the rolls to recover sufficient speed to effect the successive breaking operations, substantially as set forth.

"3. In apparatus for breaking rock by kinetic energy, the combination of a pair of independently-driven and disconnected massive rolls, knobs of substantially uniform height on the rolls for catching the rock and subjecting it to a rolling action, larger and higher knobs disposed in a longitudinal row on one of the rolls for sledging large pieces of rock and reducing them to a size small enough to be subjected to the rolling action, a power connection delivering power to both the rolls insufficient to break the rock by the direct application of the power, and means for periodically delivering charges of rock to such rolls at sufficiently infrequent intervals to permit the rolls to recover sufficient speed to effect the successive breaking operations, substantially as set forth.

"4. In apparatus for breaking rock by kinetic energy, the combination of the two independent massive rolls having roughened or irregular surfaces, and the slipping power connections for both rolls, substantially as set forth."

"7. In apparatus for breaking rock by kinetic energy, the combination, with independent massive rolls having roughened or irregular surfaces, of slipping power connections, and means for periodically delivering rock to the rolls, substantially as set forth."

Claim 1 of the method patent is for a combination and describes the operation. Claim 2 is not substantially different, but has included the feature of periodical delivery of rock to the rolls. Claim 2 of the apparatus patent is similar to claim 1, except that in its combination of elements is included "a power connection delivering power to both the rolls insufficient to start the rolls from a state of rest," while in claim 1 "the power connection delivering power to the rolls is insufficient to break the rock by the direct application of the power." Claim 3 includes the higher knobs to break the rock to be subjected to the rolling action. Claims 4 and 7 are broadly for the combination of two independent massive rolls with irregular surfaces, and the slipping power connections for both rolls. Claims 5 and 6 include the element of friction clutches.

A number of patents for crushers having rollers are claimed by defendants to anticipate and limit the claims in controversy; but such patents are inapplicable. To bring together and adapt in dimensions iron rollers of such large proportions inclosed in a frame and providing means for periodically storing kinetic energy and periodically expending it as described in the specifications was invention of the highest merit. It was not a question simply of changing the proportions, size, or shape of the rolls. New and novel additions in crushing apparatus were made. The prior crushing or pressing rolls contained no helpful suggestions to the patentee as to the manner of using kinetic energy to instantaneously fracture heavy rock. Although the prior art shows crushing rolls with irregular surfaces as evidenced by the patents to Umholtz, Nos. 48,224 and 27,581, for

coal breaker, yet such rolls are geared together and were not driven by a belt in opposite directions. They were incapable of delivering blows to powerful rock masses. Indeed, there is a total absence in the prior art of the use of kinetic energy to secure the hammering action necessary to break such heavy material as contemplated by Edison's inventions. A few of the more pertinent of the prior structures are here specialized. In the Adams patent, No. 24,783, for breaking stone, the rolls, which are provided with teeth, were geared together, and there is no suggestion in the patent that kinetic energy was any factor in breaking the material. The British patent to Stowe, No. 9,148, discloses a crushing machine with projections on the rollers, and it has a fly wheel which defendants claim was a recognition of the desirability of crushing the material by kinetic energy; but I think that such energy was simply used to secure an even movement of the rolls. Moreover, Edison's feature of driving the rolls by belting is lacking, and the certitude that it was incapable of fracturing heavy rock is clearly apparent. In the Cornish rolls, which have irregular surfaces, the rolls were geared together and were not independently driven and disconnected. To this class of crushers belong the patents to Babbitt, Stutz, and Culver—patents in which the rolls were not designed to operate on the mass at intervals—and those having projections or teeth on the rolls pressed or ground the material, instead of breaking it by hammering. Nor was the speed of any such rolls accelerated by kinetic energy.

In rolls of the size and weight of complainant's it was essential that they be driven independently by belting so as to secure both co-operative and varying movements. Indeed, the essence of the invention resided in such changes over the prior art. For, as indicated by the evidence, to have geared the rolls would, because of the great weight and strain, have broken the gear teeth. In the Wall rolls, upon which the defendants lay emphasis, the rolls, it is true, were large, but they formed to operate as spiral gears, and were driven by gears; the method of crushing being in the nature of direct application of the power, with the result that only small rock or stone could be crushed or pulverized. Such rolls did not operate by kinetic energy. They were absolutely unable to crush large rock or boulder, and after repeated trials were abandoned. In the prior art there is not disclosed any method or apparatus for breaking rock by the medium of crushing rolls which are provided with knobs or projections and are driven by belting. They were provided, in most instances, with teeth or projections on the rolls which were geared together, and their function was to compress, pinch, or pick the material to separate the particles. The driving agent, apparently, performed the work of crushing the material, while in the patents under consideration there is a distinct departure; the material being wholly crushed or broken by the energy of the knobs on the rolls. Although some of the separate elements of the claims in controversy were old and are found in the prior apparatuses, yet such old elements had never before been assembled or combined to use power stored in the rolls to break or crush rock, nor prior to the inventions in suit had such rock been

broken or crushed by hammer blows from projections on the rolls driven by belt and rotating in opposite directions. Moreover, the patentee was the first to use a small driving power to both rolls for the purpose of starting the rolls in their revolutions from a state of rest. It is not enough to select separate elements from different devices and then without making any patentable change or improvement insist, as do the defendants, that the patented structure might have been similarly constructed. Diamond Match Co. v. Schenck (C. C.) 71 Fed. 521, affirmed 77 Fed. 208, 23 C. C. A. 122; General Electric Co. v. Wise (C. C.) 119 Fed. 922. The claims are entitled to such a fair construction as will preserve to the inventor the fruits of his discovery.

[4] There was much testimony pro and con in relation to the defense of prior public use and sale more than two years before July 16, 1897, the date of the original application. The defendants contend: First, that the method patent was on sale and in public use within the two-year period; second, that the apparatus patent was on sale and in public use more than two years before the filing of said original application; and, third, that the apparatus patent was in successful operation in the year 1897. In view of the action of the Patent Office requiring a division of the original application for patent which included claims for process and structure, the filing date of the apparatus patent must be antedated as of July 16, 1897, the date of the original application. By the file wrapper and contents it appears that on May 3, 1900—a division was required subsequently on August 1, 1900—the inventor, in obedience to such requirement, filed a divisional application for the apparatus patent. Defendant contends that the divisional application contains subject-matter not disclosed in the original application, and therefore the former cannot be antedated. The descriptive matter, however, in the application upon which the patent was granted, is substantially the same as that contained in the earlier. True, a change was made in the description, but such change in my opinion is not of material importance. We may therefore briefly examine the evidence regarding prior use and sale within two years before the original application was filed.

The construction of the crushing plant at Edison, N. J., was begun in the year 1893. Experimental rolls were constructed. There were many difficulties to overcome, viz.: The rolls in operation reduced their speed so much that they became stalled, and the belt stretched or slipped, making it impossible to crush the rock. The rolls also failed to store the required kinetic energy to break the material and failed to continue the rotation. After frequent experimental tests in 1898, which were without the desired success, the plant closed. Several periodicals or magazines have been introduced in evidence to corroborate the claim of the defendants that the rollers were successfully operated in 1894 and 1895; but such publications have not convinced me that at this time the patents were completed or beyond the experimental stage. The work at the plant was resumed, and experimenting, constructing, and making improvements on the rolls continued until early in 1897, when the patentee's conceptions were

completed. The defendants assert that not only were the giant crushers practicable before July, 1895, but nonemployés were permitted to witness the crushing operation. The permission given by Mr. Edison, however, to various persons to inspect or examine the machine if it was not then completed, will not establish a public use of the invention. Werckmeister v. American Co., 134 Fed. 321, 69 C. C. A. 553, 68 L. R. A. 591.

The defendants further claim that a commercial machine such as the specifications describe was sold, prior to 1895, to the New Jersey Zinc Company. The record shows that Mr. Edison had given a license to such company to use a crusher—not the completed invention in suit—and any patentable improvements that might subsequently be made. Indeed, it is satisfactorily shown that the giant rolls embodying the inventions in suit were not used commercially until after the original application for patent was filed, and that prior thereto the inventions were under the exclusive control of Mr. Edison. My conclusion on this phase of the controversy is that the defendants have not proven use or sale within the statutory period beyond reasonable doubt. In its most favorable aspect the testimony merely shows an experimental use of an incompleted machine, and such use, it has been frequently held, is not a public use. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; American & English Ency. of Law (2d Ed.) vol. 22, p. 338.

Coming now to the important question of infringement: The defendants, to differentiate its rollers and method of operation from complainants, contend that the rolls installed at Pekin, N. Y., are rotated by a common driving belt which engages the pulleys which are fixed rigidly by the roll shafts; that no friction clutches are interposed between the pulleys and the roll shafts as in complainant's structure; that the power is directly applied to the rolls from the driving belt, and the rolls are not driven independently, nor are they disconnected, but, on the contrary, they are dependent and connected upon and to a belt which engages the shaft.

The expert witnesses are not in accord on various propositions relating to the similarity of the defendants' crusher to that of the complainant or on the means adopted by the defendants to perform their work. By the testimony of complainant's witnesses Newhouse and Van Zendt, who inspected defendants' rolls, it appears that they are approximately the same weight and size as those of complainant. They are similarly mounted in a frame, and the two pulleys which are positioned side by side drive the belts by means of a driving belt which runs from a pulley upon a countershaft over a belt-tightening pulley, and the roll pulley, and to quote from the testimony:

"Furthest away from the line shaft, coming in contact with this pulley on the lower side passing partly around this pulley, then partly around the other pulley (U3) and back to the countershaft (t) in such a way that the same belt drives both rolls in the proper direction, that is, toward each other from the top; each pulley is rigidly keyed to its roll shaft."

Such method of using the driving belt to rotate the rolls is practically the same as that of complainant. In place of the friction clutch between the pulleys and the roll shafts specified in claims 5 and 6 of

the apparatus patent, the defendants seem to rely on the customary creeping of the belt to slightly reduce the speed of the rolls, and not by any slipping connection or clutch arrangement. The evidence, however, is open to the inference that the driving belt naturally slips upon the roll surfaces as the rolls reduce their speed. I am not unmindful of the testimony of the defendants' superintendent, Peterson, who positively testified that at no time had he observed any tendency of the belt to slip on the roll pulleys; but, nevertheless, I am satisfied that there was a slipping, as distinguished from what is technically known as creeping, and, moreover, that such slipping was induced by the manner in which the rolls were operated. The specification of the method patent substantially states that, after the rolls acquire their full speed, the rock is periodically dumped on the rolls, and the consequent effect thereof is to partially arrest the motion of the rolls, etc. In the defendant's method the material is likewise periodically dumped on the rolls, with the result that their speed is reduced and the driving belts are caused to slip at some point on the shaft. Claims 4 and 7 are not limited to the friction clutches (complainant's preferred method of reducing the speed) as the means by which the speed of the rolls is controlled or reduced.

I am also of the opinion that the defendants' rolls are "independently driven and disconnected," and therefore infringe the method patent and the broad claims 1, 2, and 3 of the apparatus patent. The phrase "independently driven and disconnected" relates to the construction and method of driving the rolls, and was obviously used in the Patent Office to differentiate rolls driven by belting and such as are geared together. In providing a drive by belting, the patentee secured a disconnection of the rolls and independent rotation, which were essential features of his patents, and by which the kinetic energy was rendered capable of being used. Giving said claims such a construction without limiting them to a friction clutch connection, the defendants' rolls must be deemed to operate within their scope, as each is driven by its own pulley, which bears independently of the other on the driving belt, thus receiving its momentum directly from its pulley. The patentee has the undoubted right to every use to which his origination can be applied and to every way in which it can be used to carry out its function, and, having correctly described his invention, it makes no difference that he did not claim such uses. National Co. v. Interchangeable Co., 106 Fed. 693–709, 45 C. C. A. 544.

To summarize, the defendants' rolls in operation are substantially the same as those of complainant, having a like capacity for crushing rock. They use the kinetic energy to break the material periodically dumped upon the rolls, and in their operation perform the functions of the patents in suit and achieve the same result. The method patent describes the mode of treatment of the rock by which it may be shattered and the series of steps to be taken in the transforming process.

The combination of elements by which the splendid results of breaking rock by blows due to the use of kinetic energy were attained undoubtedly involves the exercise of invention as distinguished from mechanical skill. The prior art neither suggested the patentee's meth-

od nor the apparatus by which the work could be done A fair preponderance of the evidence shows that the defendants have appropriated the inventions and infringed the claims of the method patent, and claims 1, 2, 3, 4, and 7 of the apparatus patent; claims 5 and 6 of the latter are not infringed.

Accordingly, the complainant may have a decree for injunction and accounting, with costs.