## FERGUSON et al. v. FORD MOTOR CO. et al.

District Court, S. D. New York.
April 21, 1948.

Cahill, Gordon, Zachry & Reindel, of New York City (James A. Fowler, Jr., and Mathias F. Correa, both of New York City, of counsel), and Carlson, Pitzner, Hubbard & Wolfe, of New York City (Richard R. Wolfe, of Chicago, Ill., of counsel), for plaintiffs.

Simpson, Thacher & Bartlett, of Washington, D. C. (Whitney North Seymour, of New York City, of counsel), for defendants Ford Motor Company and Henry Ford, II.

Cravath, Swaine & Moore, of New York City (Bruce Bromley, of New York City, of counsel), for defendants Dearborn Motors Corporation and Ernest C. Kanzler.

Duncombe, Pleasants & Donovan, of New York City (Samuel A. Pleasants, of New York City, of counsel), for defendant Sherman Tractor & Equipment Co., Inc.

RYAN, District Judge.

Defendants move to dismiss the complaint on the ground that the District Court for the Southern District of New York is not the appropriate forum for the trial of this action, claiming that a determination of the issues would be had at greater convenience to the parties and witnesses if the action were brought in the United States District Court, Eastern Disrict of Michigan, Southern Division, Detroit; and, in addition and as to the second cause of action, that this court has no jurisdiction because the venue requirements for patent infringement suits are not satisfied. The defendant, Dearborn Motors Corporation, adds as a further ground for dismissal that to require it to defend this action in the Southern District of New York would be an undue burden on interstate commerce.

We shall consider only the facts involving those defendants who have been served by plaintiffs, to wit: Ford Motor Company, Dearborn Motors Corporation and its president, Ernest C. Kanzler, Henry Ford II and Sherman Tractor & Equipment Co., Incorporated.

Ford Motor Company is a Delaware corporation qualified to do business in the State of New York, maintaining a regular and established place of business in this district. Dearborn Motors Corporation is also a Delaware corporation and transacts business regularly here. Ernest C. Kanzler and Henry Ford II are residents of Michigan. Sherman Tractor & Equipment Co., Incorporated, is a New York corporation and maintains a regular and established place of business within this district. The plaintiffs are Harry Ferguson, as an individual and a British citizen, and Harry Ferguson, Inc., a Delaware corporation. The complaint alleges three claims for relief against twelve defendants.

The first cause of action alleges, in substance, that in 1938, the late Henry Ford and Harry Ferguson entered into an oral agreement terminable by either party at any time, for the production and sale of a farm tractor, invented and patented by Ferguson; that operations were continued under this agreement between Ford Motor Company and the corporate plaintiff from 1938 until the end of 1946; that it was a relationship of good faith and mutual confidence; that defendants conspired to breach the alleged agreement, to destroy plaintiffs' business and to appropriate it through defendant, Dearborn Motors. It is alleged that this conspiracy violated sections 1 and 2 of the Sherman Act and sections 3 and 7 of the Clayton Act with damages of $80,000,000 and a prayer for treble that sum under section 4 of the Clayton Act. 15 U.S.C.A. §§ 1, 2, 14, 15 and 18.

The second cause of action alleges the same facts as to the conspiracy but claims that one facet of the plan was to infringe deliberately certain patents of Ferguson's by copying the Ferguson system tractor and selling such allegedly infringing tractors in violation of these patents, with resulting damage of $3,700,000 and asking judgment in three times this amount. 35 U.S.C.A. § 67.

The third cause of action is an alleged equitable claim, as well as a tort claim, based upon and incorporating the allegations of the first and second causes of action, but alleged to be ancillary to them, and does not ask for damages additional to their total of $251,100,000.

Many of the affidavits and a large portion of the briefs submitted discuss the alleged merits (as well as the lack of merit) of plaintiffs' claims. The consideration of these matters is neither proper nor necessary to the determination of the motion now before us; their appraisal is to be arrived at after trial only. Much, too, has been said by plaintiffs of the impossibility of securing a jury in Detroit "which would be wholly unbiased and without prejudice in this case," and to support this contention have submitted copies of proceedings had in a suit brought by Henry Ford, plaintiff, against The Tribune Company et al., defendants, in the Michigan Circuit Court for the County of Wayne. An opinion of the court in that litigation in February, 1919, also submitted, held that "it would be impossible to secure a jury from the body of this County [Wayne] that would be wholly without prejudice in a case in which Henry Ford is one of the parties litigant," and granted a change of venue to an adjoining

county. We reject this finding of a local court, made almost thirty years ago, not only as remote and of no value as an indication of present bias, but upon careful review conclude that it should receive no weight whatsoever even to demonstrate conditions as allleged to have existed in Detroit in 1919.

We come then to the substantial issues presented on this motion.

■ The Supreme Court has clearly established that federal courts do have inherent power to dismiss complaints on the ground of forum non conveniens. Gulf Oil Corporation v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839. The Court distinguished the cases of Miles v. Illinois Cent. R. Co., 1942, 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, and Baltimore & O. R. Co. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222, for the reason that the venue provision of the Federal Employers' Liability Act, 45 U.S.C.A. § 56, was a "special venue" provision, and that Congress in enacting it intended to prohibit the application of this principle.

Plaintiffs contend that the venue provisions of the Clayton Act, under which this action is brought, are also special venue statutes and are governed by the same rule. They maintain that this court does not have authority to dismiss their first cause of action on the ground of forum non conveniens. Neither the Supreme Court nor any federal appellate court appears to have passed on this question. The United States District Court for the Southern District of California did first hold that civil suits under the Clayton Act fell within the special venue category [United States v. Standard Oil Co. of California, D.C., July, 1947, 7 F.R.D. 338], but later limited the classification to include only those venue sections whose legislative history and background indicated legislative intent to foreclose the question of forum non conveniens and not to include all venue sections drafted for particular causes of action. [United States v. National City Lines, Inc., Sept. 1947, D.C., 7 F.R.D. 456]. It is interesting to note that although in the former case the doctrine was held inapplicable, in a subsequent criminal action involving exactly the same facts defendant was granted a change of venue to a more convenient forum under Rule 21(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687. [United States v. National City Lines, Inc., D.C. Aug. 1947, 7 F.R.D. 393.] The United States District Court for the Western District of Pennsylvania has held that the venue section of the Securities Act of 1933, 15 U.S.C.A. § 77v(a), is a special venue provision for the purposes of this rule. Securities Exchange Commission v. Wimer, D.C., 75 F.Supp. 955. This court in a recent anti-trust case, after holding that the facts did not call for the exercise of discretion in favor of the defendant, by way of dictum expressed the thought that in any event the doctrine of forum non conveniens was not applicable to suits under the anti-trust laws. 15 U.C.S.A. §§ 15, 22; Fifth & Walnut, Inc., et al. v. Loew's Inc., et al., S.D.N.Y., 76 F.Supp. 64. However, with the issue now directly posed, re-examination of all relevant factors has been made. While Mr. Justice Jackson in the Gulf Oil case, supra, spoke in terms of "special venue" statutes foreclosing the doctrine of forum non conveniens, it is to be noted that the Supreme Court examined the particular legislative background of the FELA venue provision when passing upon this question in Miles v. Illinois Central R. Co., supra; and only after so doing did it conclude that the Congress deliberately chose to give plaintiff in such actions the absolute right to select any forum within the statute's scope. Following a recognized canon of statutory construction (Moore Ice Cream Co. v. Rose, 1933, 289 U.S. 373, 377, 53 S.Ct. 620, 77 L.Ed. 1265), the Court also looked to the circumstances under which the statute was passed and the expressions of Congress to find that as for FELA actions, that body "loaded the dice" in favor of a plaintiff.

There are other factors which persuade that the special venue statute rule is applicable only on the basis of individual legislative history.

The United States Code is replete with venue sections for particular types of suits, viz., FELA, 45 U.S.C.A. § 56; Clayton Act, 15 U.S.C.A. §§ 15, 22; Judicial Code, 28 U.S.C.A. § 105; Copyright Actions, 17 U.S.

C.A. § 35; Stockholders' Derivative Suits, 28 U.S.C.A. § 112; Securities Act, 15 U.S.C.A. § 77v(a). To exclude the doctrine of forum non conveniens from all such suits and from suits on similar causes of action would be to emasculate it. It seems that had the Supreme Court meant to limit the operation of the rule so much it would have done so explicitly. Finally, the Supreme Court in the case of Koster v. Lumbermens Mutual Co., 1947, 330 U.S. 518, 67 S.Ct. 828, upheld the application of the doctrine of forum non conveniens to a stockholder's derivative suit brought under a statute having its own venue section in language substantially similar to that of the FELA and the Clayton Act. Under § 112 of 28 U.S.C.A. stockholders' derivative suits may be brought: " * * * in any district in which suit against the defendant or defendants in said stockholders' action, other than said corporation, might have been brought by such corporation and process in such cases may be served upon such corporation in any district wherein such corporation resides or may be found. * * *"

Under § 56 of 45 U.S.C.A. of the FELA, an action may be brought: " * * * in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. * * *," And, under § 15 of 15 U.S.C.A. of the Clayton Act, suit may be brought: " * * * in the district in which the defendant resides * * * or has an agent * * *," and under § 22, suit against a corporation may be brought: " * * * not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business * * *."

■■■ It appears that the doctrine of forum non conveniens cannot be foreclosed in anti-trust suits merely because the statute contains its own venue section, but rather that an examination of its legislative history must be made to determine whether the doctrine is or is not applicable. Since the principle of forum non conveniens is applicable in the absence of legislative mandate to the contrary, the search is not for evidence that the Congress intended it to apply, but that it intended it not to apply. We find no indications, on the part of the Congress, that it intended the latter. Congress did by § 12 of the Clayton Act extend the venue allowances for anti-trust actions (51 Cong. Rec.16274), by permitting plaintiff to sue a defendant where he transacts business Eastman Kodak Co. v. Southern Photo Material Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. But cf. King v. Wall & Beaver Street Corporation, 79 App.D.C. 234, 145 F.2d 377, 380, and there is indication that it intended to deny the courts the power to decline such jurisdiction.

■■■ A gleaning of the Congressional discussions relating to the venue provisions of the Clayton Act leads to the conclusion that the Congress intended to give plaintiffs in such actions the widest possible choice of forum. The following comments concerning the scope of the venue section is found:

"* * * We have already broadened the provisions of the Sherman Act with reference to the bringing of suit and the service of process at any place where the corporation is an inhabitant, or wherever it has an agent. I can hardly conceive of a suit being brought otherwise than under these conditions, and it makes service by process easy * * *." (51 Cong.Rec. 9608)

And further: " * * * I will say to my friend from Wisconsin that we are liberalizing the procedure in the courts in order to give the individual who is damaged the right to get his damages anywhere—anywhere you can catch the offender. * * *" (51 Cong.Rec. 16274)

Throughout the debate the atmosphere is markedly similar to that in the discussion relative to the FELA venue provisions. Again we note legislative desire to favor plaintiffs. We have evidence of a strong legislative purpose to abolish monopolies and of a general policy to hold anti-trust violators amenable to suit in several jurisdictions despite resulting hardship. Nowhere, in the record, is there any consideration given to the possible inconvenience of defendants. In veiw of the

circumstances leading up to these particular provisions and of the inclusive language used; and more important, analyzing the expressions of purpose found in the Congressional Records, we must conclude that Congress has made the principles of forum non conveniens inapplicable to suits brought under the anti-trust statutes. And, an examination of the record and the various reports (H. R. Rep. 627, Sen. Rep. 698, Cong. Rec. 1168, 63rd Cong. 2d.Sess.) further confirms this conclusion.

The Sherman Act was passed July 2, 1890. By it combinations in restraint of trade were declared illegal and criminal sanctions were set up to enforce it. The Government was given power to enforce it, but not much aid beyond the mere declaration of illegality of trusts and monopolies was given private plaintiffs in prosecuting their rights under the Act.

On October 15, 1914, Congress passed the Clayton Act. Fletcher (Cyclopedia of The Law of Private Corporations, Vol. 10, § 5041) analyzes the venue changes effected by this legislation, as follows:

"By section 7 of the Sherman Act [15 U.S.C.A. § 15 note] it is provided that anyone injured in his person or property by another person or corporation by reason of anything declared to be unlawful by that act may sue therefor 'in the district in which the defendant resides or is found.' [n. Sherman Act July 2, 1890, ch. 647, § 7, 26 Stat. 210]. But by section 4 of the Clayton Act, which supplemented the former laws against unlawful restraints and monopolies of interstate trade, the local jurisdiction of the district courts was materially enlarged in reference to suits against corporations. It was provided that any person 'injured in his business or property by reason of anything forbidden in the antitrust laws' might sue therefor in the district 'in which the defendant resides or is found or has an agent.' [n. 15 U.S.C.A. § 15].

"Accordingly it will be seen that section 4 of the Clayton Act is similar to section 7 of the Sherman Act, but by the insertion of words 'or has an agent' in the venue clause, the plaintiff, in some circumstances, has additional districts in which to bring his suit to those permitted by section 7 of the Sherman Act. [n. Eastman Kodak Co. v. Southern Photo Materials Co., supra; Venner v. Pennsylvania Steel Co. of New Jersey, D.C., 250 F. 292].

"By section 12 of the Clayton Act it is clear that the jurisdictional provision of section 7 of the Sherman Act was very greatly enlarged, dealing specifically with the venue and service of process in suits against corporations. It is provided that 'any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business.' [n. 15 U.S.C.A. § 22; Venner v. Pennsylvania Steel Co. of New Jersey, supra]. It will be observed that section 12 of the Clayton Act deals only with corporations, and undoubtedly affords the plaintiff additional districts wherein he may sue that class of defendants. [n. Venner v. Pennsylvania Steel Co. supra; Southern Photo Material Co. v. Eastman Kodak Co., supra]. It is clear that as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, the necessary effect of Section 12 of the Clayton Act was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business,' although neither residing nor 'found' therein, [n. Eastman Kodak Co. v. Southern Photo Materials Co., supra], and a corporation is engaged in transacting business in a district within the meaning of this section, in such a sense as to establish the venue of a suit, although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process, [n. Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corporation, 1 Cir., 46 F.2d 623, rev'g D.C., 41 F.2d 767], if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character. [n. Eastman Kodak Co. v. Southern Photo Materials Co., supra; Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corporation, supra. See also Cyclopedia of Federal

Procedure, § 375] This provision does not affect the general jurisdiction of the district courts, but merely establishes a personal privilege which a defendant is free to waive. [n. General Inv. Co. v. Lake Shore & M. S. R. Co., 6 Cir., 269 F. 235, aff'd 260 U.S. 261, 279, 43 S.Ct. 106, 67 L.Ed. 244].

"Having an office and doing business within the district is 'found' within the meaning of the Sherman and Clayton Acts allowing suit against the defendant in such case irrespective of diversity of citizenship; [n. Venner v. Pennsylvania Steel Co. of New Jersey, supra]; accordingly the federal courts have jurisdiction even though the plaintiff is a citizen of the state, as well as an inhabitant of the district in which the defendant is found. [n. Thorburn v. Gates, D.C., 225 F. 613, 615; Michigan Aluminum Foundry Co. v. Aluminum Castings Co., C.C., 190 F. 879]."

Congress, in passing the Clayton Act to amend the Sherman Act, showed just as much solicitude in giving private plaintiffs in anti-trust actions a choice of forum as it showed in giving plaintiffs a choice of forum under the amendment to the FELA. Nor, should we fail to give weight to that portion of Mr. Justice Reed's opinion in Baltimore & Ohio R. Co. v. Kepner, supra, 314 U.S. at page 54, 62 S.Ct. at page 10, 86 L.Ed. 28, 136 A.L.R. 1222, where he wrote of § 6 of the FELA:

" * * * When the section was enacted it filled the entire field of venue in federal courts. A privilege of venue granted by the legislative body which created this right of action cannot be frustrated for reasons of convenience or expense. If it is deemed unjust, the remedy is legislative * * *."

It should be noted that the special venue provisions of the FELA were enacted in April, 1910, and the amendments granting special venue to plaintiffs in anti-trust suits were not adopted in the Clayton Act until October, 1914. The fact that almost identical language was used is most persuasive to convince one that the same privileges were intended to be extended by both Acts.

The conclusion follows that the doctrine of forum non conveniens is not applicable to anti-trust suits. These motions have not

been disposed of on this conclusion only, but the same result has been reached on consideration of the factual merits.

We shall first consider the position of defendant Sherman Tractor & Equipment Co.

■ The Supreme Court in the Gulf Oil case, supra, enumerated the following factors to be weighed in determining whether a suit should be dismissed for forum non conveniens: The relative ease of access to the sources of proof, the availability of compulsory process for unwilling witnesses and the cost of securing the attendance of willing ones, the possibility of the need for a view of the premises which may be involved, the burden of jury duty on the forum, the onus of the trial on the court's efficient functioning, and the federal court's familiarity with the state law which will determine the controversy.

Plaintiffs allege that this defendant, Sherman, is a conspirator charged with having (1) coerced dealers to drop plaintiffs' products and to sell for Dearborn Motors Corporation, (2) caused dealers to continue to use plaintiffs' pamphlets and manuals after having ceased handling their products, (3) attempted to give the impression to Sherman's customers that Dearborn was the successor to plaintiffs, and (4) sold the Ford Tractor.

Eber C. Sherman, the motivating force of the Sherman Corporation, does not deny that his main offices are in this district, and that the Sherman Tractor & Equipment Co. is a New York corporation having carried on business in this district for many years. As a resident of this district, with most of its affairs centered here, it is quite clearly not entitled to a dismissal. It points, however, to the allegedly great inconvenience to its co-defendants and maintains that it is not an obstacle to dismissal, because it will stipulate to accept service within the Eastern District of Michigan (the most convenient district according to the defendants), and will make Eber C. Sherman, its president and alleged controlling stockholder, available there as a witness for plaintiffs.

■ In the Gulf Oil case, supra, the Supreme Court said that the doctrine of forum non conveniens should never be ap-

plied unless the defendant was amenable to process in the allegedly more convenient forum, Mr. Justice Jackson writing that, 330 U.S. at page 506, 67 S.Ct. at page 842.

" * * * In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them."

█ Defendant Sherman argues that by its stipulation—waiving venue protection—he is amenable to suit in Michigan. General Inv. Co. v. Lake Shore & M. S. R. Co., 1922, 260 U.S. 261, 279, 43 S.Ct. 106, 67 L.Ed. 244. It appears to be sounder policy to require that defendant be amenable to suit in the second jurisdiction, on the facts themselves, and not to accept stipulation such as that offered by defendant. Fifth & Walnut Inc. et al. v. Loew's Inc., et al., supra; Neal v. Pennsylvania Ry. Co. et al., S.D.N.Y., 77 F.Supp. 423; cf. Williamson v. Palmer, 181 Misc. 610, 43 N.Y.S.2d 532. Defendants suggest that if such stipulations are not accepted, a plaintiff may defeat the rule of forum non conveniens by joining a defendant who is not amenable to suit in the other jurisdiction. Were a defendant is joined for this purpose, such subterfuge may readily be ignored. Suffice it to say that this is not claimed by defendants to be the situation in this litigation. The motion by Sherman must fail, despite its offer to stipulate, which does not alter the degree of convenience to it of trial in this district, though admittedly making the Eastern District of Michigan more acceptable to plaintiffs. Tivoli Realty Co. v. Interstate Circuit Inc. et al., 5 Cir., 167 F.2d 155.

Sherman is a central figure in the alleged conspiracy. Since we have found that this district is not an inconvenient forum to it, this must be considered as an important factor against the dismissal of the complaint as to the other defendants. To require plaintiffs to sue Sherman here and the other defendants in Detroit would be the nadir of convenient administration.

Concerning all the defendants the following allegations are made by the plaintiffs:

The first alleged major object of the claimed conspiracy was to take over the distributor-dealer organization developed by plaintiffs over a period of years. Plaintiffs allege (and, defendants do not deny) that of thirty-three distributors in the organization, only one was in Michigan and the other thirty-two in other states. It appears that there were only 101 dealers in Michigan and 2749 in other states. Many of them will undoubtedly be called on the trial. While New York is not so strikingly fitting a place at which to interrogate these men, neither is it so strikingly unfit, compared with the Eastern District of Michigan, as to justify a disturbance of plaintiffs' choice of forum.

█ It is well to remember that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," (Gulf Oil Corporation v. Gilbert, supra), and that only where the choice is vexatious and oppressive to defendant should it be put aside by the court. Williams v. Green Bay & W. R. Co., 1946, 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311; Gulf Oil case, supra.

Plaintiffs also point to a series of dealer-distributor meetings throughout the United States, one of which took place in this district (at Tuckahoe, N. Y.). Defendant Dearborn says that this meeting was conducted by Sherman, but admits that its officials attended. It is enough for now that Dearborn admits attendance and that it is contended by plaintiffs that the incident will be important at the trial. This propinquity of relevant events tends against finding this district to be inconvenient.

Another alleged major objective of the claimed conspiracy was to take over Ferguson's source of farm implements which were utilized in his tractor system. These implements are manufactured by forty-one independent companies of which but eight are in Michigan. Again, we note that while New York would not be ideal, Michigan would be slightly less so.

Where there is a litigation as is here involved, it is pointless to search for a form to which all relevant matters will be convenient. The best that can be done is to

select a relatively convenient one and to utilize the various means for discoveries under the federal rules to alleviate the inevitable inconveniences.

Another matter alleged is plaintiffs' efforts through a financier in New York to raise capital after the split with Ford. These negotiations were had in New York; most of the relevant evidence on this issue is very likely within this district, which is the recognized investment market of the world. Therefore, as to these items of proof New York is clearly the most convenient place.

No suggestion is made that we should decline jurisdiction because of some special relief available in a Michigan court that this court cannot grant. Slater v. Mexican N. R. Co., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900.

It appears from the admitted occurrences at Tuckahoe, and from another similar meeting within this district at Beacon, N. Y., from the fact that Sherman, both the individual and the corporation have long been domiciled and conducted business here and that a considerable portion of the selling and advertising for the Ford tractor was effected in this district, that a substantial number of witnesses and documents will come from within and around this district.

Of the other possible witnesses, only the distributors and dealers above mentioned and the officials and employees of Ford are subject to compulsory process in Michigan out of the great number diffused throughout the country. The transportation facilities of air and rail to and from New York alleviate to a considerable extent the distance to be travelled. There is small likelihood, and defendants have not suggested, that this litigation will require a view of any points in Michigan. The bulk of the law to be applied is federal law.

█ The court does not find that trial in this district is either oppressive or vexatious to defendants—warranting a dismissal of the complaint.

Defendant, Dearborn, raises an additional ground for dismissal against it. It argues that it would be an undue burden on interstate commerce to compel it to defend this action in this district.

█ There can be no doubt that Congress may burden and interfere with interstate commerce if it so chooses. Kilpatrick v. Texas & P. R. Co., 2 Cir., 166 F.2d 788; Chesapeake & O. R. Co. v. Vigor, 6 Cir., 90 F.2d 7, 8. By the Clayton Act venue provisions, Congress clearly intended, as indicated by Congressional voicings (noted above), to allow a plaintiff to sue a defendant in any jurisdiction provided for by the Act—whether or not it burdened interstate commerce. Defendant Dearborn would require Congress to explicitly state in each venue provision that burdens on interstate commerce were thereby authorized. There is no substance to this position.

We must consider next the issue of patent infringement alleged in the second cause of action.

Plaintiffs allege that defendants conspired to deliberately infringe its patents and accuses the present Ford tractor of being an infringing article.

Defendants argue that in this the court has no jurisdiction because of improper venue, under the patent venue, which provides that,

" * * * In suits brought for the infringement of letters patent the district courts of the United States shall have no jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation shall have committed acts of infringement and have a regular and established place of business. * * *" 28 U.S.C.A. § 109.

█ Jurisdiction and venue of a cause of action for patent infringement are conferred exclusively by this section. Stonite Products v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026; Blaw-Knox Co. v. Lederle, 6 Cir., 151 F.2d 973.

█ As to the defendant Sherman there is clearly jurisdiction within the first clause of this section. Sherman relies

again on its proposed stipulation, and in effect, prays for a dismissal alleging forum non conveniens to be applicable to patent suits. Urquhart v. American-La-France Foamite Corporation, 79 App.D.C. 219, 144 F.2d 542, certiorari denied 1944, 323 U.S. 783, 65 S.Ct. 273. Assuming, arguendo, that the doctrine of forum non conveniens is so applicable, since the suit on the other cause of action is to proceed here and since this is part of the same alleged conspiracy, we would be constrained to deny dismissal on grounds of forum here also. The other three defendants, Ford Motor Company, Henry Ford II and Dearborn Motors Corporation, not being inhabitants of this district, must be found to come within the alternative clause to give this court jurisdiction. These defendants must be shown both to have committed acts of infringement and to have a regular and established place of business within this district. One without the other is not enough. Edison v. Allis-Chalmers Co., C.C., 191 F. 837, 839; Streat v. American Rubber Co., C.C., 115 F. 634.

There are three possible ways in which one may infringe a patent: by *making* a device covered by the patent; by *using* such a device; or by *selling* a patented device. 35 U.S.C.A. § 40.

Plaintiffs first point to alleged occurrences within this district at Tuckahoe and Beacon, New York. In the promotion of the new tractor, as alleged, Dearborn per force had a general campaign, part of which involved holding meetings throughout the country attended by local dealers with a tractor present. One such meeting was held in Tuckahoe and another in Beacon. Defendant Dearborn maintains, however, that he sold this tractor to Sherman in Detroit, that Sherman organized the meeting and all its affairs and that some Dearborn officials attended, but only as guests. Plaintiffs maintain that these meetings were organized and motivated by defendant Dearborn, that he flew the tractors in for the meeting and that, hence, the acts of infringement were Dearborn's. Sherman is the state distributor of Dearborn's national product, and it seems unlikely that Dearborn officials would be only guests at such meetings. Defendants do not deny that Dearborn officials attended, participated in the events and that the time and place for the meeting were set by Dearborn. Certainly, the latter must in some way have aided the selling of its own product. It would seem only reasonable to conclude that Dearborn was the motivating force behind the events, and that, if it was an act of infringement, as alleged, Dearborn was chargeable with it.

While mere display alone might not constitute an act of infringement (Marlatt v. Mergenthaler Linotype Co., D.C., 70 F.Supp. 426, 431, 432), it seems clear that here it was more than mere display, but rather that there was a promotion and a campaign for the marketing of this article. This necessitated a detailed explanation of the tractor and its operation and cost, and other germane subjects. While such activity might not alone amount to infringement (Patent Tube Corporation v. Bristol-Meyers Co., D.C., 25 F. Supp. 776), there is a more convincing circumstance alleged to have occurred within this district, involving all defendants, from which infringement may reasonably be inferred.

Plaintiffs, quoting a bulletin of Ford Motor Company, maintain that the first 28,000 tractors produced by Ford in 1947 had transmissions which jumped out of gear or locked in two gears simultaneously. It is alleged that 8,000 of these required "field conversion." It is fairly certain, from practical consideration, that the righting of these defective tractors required work on the part of Ford Motor Company, Dearborn and Sherman in this district. We cannot, therefore, conclude that defendants have not committed acts of infringement within this district. Plaintiffs' allegations that this tractor is an infringing device are accepted as true for the purposes of this motion.

As to Henry Ford II, individually, he represents the family who holds all the voting stock of the Ford Motor Company— he is admittedly the company itself. He directs, manages, controls and speaks for this family enterprise. We might well

query whether it would be of any point to dismiss the second cause of action against him and maintain it against the Ford Motor Company, and maintain the first cause of action against both. It has been held that in some situations the cloak of corporate activity will not shield the interested individuals, and on this rationale, Ford individually would be bound by the infringing acts of the Company. Furthermore, as an alleged member of the claimed conspiracy he is liable, once the conspiracy has been established, for the acts of the other alleged conspirators committed to accomplish its alleged aims and purposes. United States v. Socony-Vacuum Oil Co. 1940, 310 U.S. 150, 253, 254, 60 S. Ct. 811, 84 L.Ed. 1129; Hitchman Coal & Coke Co. v. Mitchell, 1917, 245 U.S. 229, 249, 38 S.Ct. 65, 62 L.Ed. 260, L.R.A. 1918C, 497, Ann.Cas.1918B, 461; Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189. He must, therefore, for this motion be considered to have committed the acts of infringement alleged within this district. Concluding that it is reasonable to infer that defendants have committed acts of infringement within this district, we must next inquire whether they have regular and established places of business in this district.

■■■■ To satisfy this provision of the statute it is not enough that a party transact business in the district. Phillips v. Baker, 9 Cir., 121 F.2d 752, certiorari denied 314 U.S. 688, 62 S.Ct. 301, 86 L.Ed. 551, or that it merely solicit business in it. Elevator Supplies Co. v. Wagner Mfg. Co., D.C., 54 F.2d 937; Erickson v. Emerson, D.C., 40 F.Supp. 844. The ultimate distribution of a manufacturer's products within the district does not necessarily result in an act of infringement. Bulldog Electric Products Co. v. Cole Electric Prod. Co., 2 Cir., 134 F.2d 545. On the other hand, the regular and established place of business need not be the business connected with the alleged patent infringement. Chadeloid Chemical Co. v. Chicago Wood Finish Co., C.C., 180 F. 770; Shelton v. Schwartz, D. C., 131 F.2d 805, 808.

■■■■ The Ford Motor Company does not deny that it has been qualified to do business in New York since 1920, and that it has a regular place of business at 45 Rockefeller Plaza, New York City. The fact that in this district it deals with Ford cars and not tractors is immaterial to the issue involved. Henry Ford II must be considered, in effect, the Ford Motor Company for this purpose. Dearborn closely supervises the sales of Sherman in this district and frequently uses the latter's offices in Mount Vernon. It is alleged to be an instrumentality of Ford Motor Company; this company cannot escape liability to suit here by effecting its creation. Vogt Instant Freezers v. New York Eskimo Pie Corporation, 2 Cir., 69 F.2d 84, 86; Pacific Can Co. v. Hewes, 9 Cir., 95 F.2d 42; Westinghouse Electric & Manufacturing Co. v. Allis-Chalmers Co., C.C., 176 F. 362.

■■■■ It is found for this motion that all the defendants have a regular and established place of business here within the meaning of the statute, and that this court has jurisdiction over the patent infringements alleged in the second cause of action. Patent suits have been dismissed where jurisdiction was doubtful. Candas v. Agnini, D.C., 14 F.Supp. 21; General Electric Co. v. Best Electric Co., D.C., 220 F. 347. This does not appear to be the case here. Moreover, even if it were, the fact that the first cause of action will be retained here would lead us to retain jurisdiction for trial over the second. It should be noted that approximately the same proofs will be made to substantiate each of the two alleged causes of action.

Sufficient has been produced by plaintiffs on this motion to warrant the trial of the alleged infringement in this district. The ultimate determination of the jurisdictional objections to the second cause of action can best be made at trial.

The third cause of action, alleging an equitable as well as a tort claim upon the same allegations as are set forth in the first and second causes of action, will depend upon the evidence adduced in support of these allegations. With the denial of the motions covering the first and second causes of action, it follows that the motion,

as to the third cause of action, must also be denied.

Motions denied.

Argument on the other motions affecting the proposed depositions is set down for Monday, April 26, 1948, at ten thirty a. m.