PARAGON OIL COMPANY, Inc., as the owner of THE HUNTERS POINT, Libellant,

v.

PANAMA REFINING & PETROCHEMI-CAL COMPANY, Inc., Respondent.

United States District Court
S. D. New York.
March 7, 1961.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, Eli Ellis, New York City, of counsel, for libellant.

Rein, Mound & Cotton, New York City, John P. Wourms, New York City, of counsel, for respondent.

DAWSON, District Judge.

This is a motion to vacate service of the citation and to dismiss the libel on the ground that respondent, Panama Refining & Petrochemical Company, Inc. (hereinafter referred to as "Panama"), is an alien corporation not engaged in the transaction of business in the State of New York and not subject to being sued in the United States District Court for the Southern District of New York.

The action was instituted by the libellant to recover for damages sustained to the tanker S.S. "Hunters Point" while pulling away from her berth in the port of Los Angeles on May 4, 1959.

The citation instituting the instant proceeding was served upon Edgar G. Cross, an Assistant Secretary and Assistant Treasurer of the respondent in New York City.

After this motion had been made, the libellant, pursuant to direction of Judge Weinfeld, took the deposition of Edgar G. Cross on the issue as to whether the respondent was subject to being sued in this district. The facts as shown in that deposition, and in the moving papers, indicate, without substantial controversy, the following:

1. The respondent is a Panamanian corporation, all the shares of which are owned by Ultramar, Ltd., an English corporation. Ultramar, Ltd., also has another subsidiary known as Golden Eagle Refining Company, Inc., which is engaged in the sale of oil and gasoline in California. Golden Eagle, however, maintains a branch office at 420 Lexington Avenue in the City of New York. Mr. Cross is an officer of both Golden Eagle Refining Company, Inc. and the respondent. The citation was served upon him at the office of Golden Eagle in New York.

2. Panama intends to construct an oil refinery in the Republic of Panama. At the present time, apparently, no construction has been commenced. The state of activity is clarified by the commendably forthright testimony of Mr. Cross.

"Q. Now, what is the business of Panama Refining? A. There is no business.

"Q. Hasn't it been engaged in any activity since it has been formed? A. We are not engaged in any activity.

\* \* \* \* \* \*

"Q. You say that Panama Refining has not done business since it has been formed? A. No. We hope to be able at some time to erect a refinery, petrochemical plant down here, but this is in the stage of attempting to put it together.

\* \* \* \* \* \*

"Q. Has Panama Refining delegated or designated any person who is responsible for putting this project into operation? A. No, there is no person designated.

\* \* \* \* \* \*

"Q. Is the respondent, Panama Refining, a going concern? A. No."

In addition, it appears that the respondent's complete staff in Panama consists of an office manager and two or three girls.

3. Panama has no office or telephone in its own name in the City or State of New York. Four of its seven officers, who are also officers of Golden Eagle, reside in the State of New York; a fifth officer is a resident of England; a sixth, a resident of Panama; and, the seventh spends half his time in Newfoundland and half in Panama.

4. The following is a list of the business done by Panama in New York, or its contacts with New York:

(a) In connection with engineering work to be done in Panama, meetings were held in the United States and Panama. Of these, two or three meetings were held in New York at the Golden Eagle offices. At those times preliminary estimates for the work contemplated were received at those offices.

(b) Two or three meetings of the Board of Directors of the respondent corporation were held at the Golden Eagle offices in New York. The last of these meetings was held in April, 1960.[1]

(c) The deponent on occasion countersigned some checks in New York. He entertained the wife and daughter of the present vice-president of Panama and Panama's temporary delegate to the U.N. on behalf of the respondent corporation. He also occasionally wrote to Peter Caras, respondent's office manager in Panama, on Panama's letterhead, which was kept at the Golden Eagle offices.

(d) Panama maintained a bank account in New York which was closed out about six months ago. The account was used primarily as a transfer account. Funds were deposited in it by the parent corporation and another related corporation and then transferred to a Panamanian bank. But, in addition, withdrawals were made in New York to cover various traveling and entertainment expenses incurred here.

(e) The Panamanian office reports to Mr. Polk, who is vice-president, general manager and foreman. Mr. Polk divides his time between Canada and Panama. In turn Mr. Polk reports to Mr. Shaheen, Panama's president, in New York.

5. The charter party on which suit was brought was executed in California by Mr. McKay, an assistant treasurer of the respondent, who is a resident of California. Other than Mr. McKay, Panama has no employees and no office in California. One of the libellant's affidavits explains that this charter party was negotiated in the City of New York by Messrs. Addison, Outwater and Associates. After the charter was agreed upon, by libellant and respondent, it was sent to the offices of Golden Eagle in New York. Thereafter it was executed by Mr. McKay in California. None of this is disputed by the respondent.

We are therefore faced with the question of whether Panama may be said, as a result of these contacts, to be doing business in New York.[2] Whether the respondent is doing business within the meaning of Section 1391(c) of Title 28 of the United States Code is a question of federal law. Jaftex Corp. v. Randolph Mills, Inc., 2 Cir., 1960, 282 F.2d 508; Bach v. Friden Calculating Mach. Co., 6 Cir., 1948, 167 F.2d 679, 681; Danzig v. Virgin Isle Hotel, Inc., D.C.S.D. N.Y.1957, 23 F.R.D. 316, 317; Satterfield v. Lehigh Valley R. R. Co., D.C.S.D. N.Y.1955, 128 F.Supp. 669, 670. The concept of doing business has been extensively developed and liberalized by the Supreme Court. This began with International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 1, 54, 90 L.Ed. 95, and continued in Travelers Health Ass'n v. Com. of Virginia ex rel. State Corp. Comm., 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154.

The furthest reaches of the doctrine were laid down in McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, where service of process was, without dissent, held proper despite the fact that the respondent had never had any officers or agents in California nor had it ever solicited or done any insurance business in California. The sole connection was that the respondent had, pursuant to an agreement to assume the insurance obligations of another company, mailed a reinsurance cer-

---

1. The libel was filed with the Court on March 29, 1960.

2. It is clear that mere personal service upon an officer of a foreign corporation is insufficient to subject that corporation to the jurisdiction of the court. Easterling v. Cooper Motors, Inc., D.C. D.N.C.1960, 26 F.R.D. 1, 2.

tificate to a California claimant. As such the Court held that the contract had a substantial connection with the State of California and, in the absence of a denial of adequate notice for sufficient time to prepare its defenses, mere inconvenience to the insurer did not amount to a denial of due process. McGee was later distinguished, but not modified, in Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. In that case the Court was unable to find even the minimal contacts required by the law; since the defendant had no office in the state and transacted no business there, the attempted service was invalid. See generally, Note, Doing Business as a Test of Venue and Jurisdiction Over Foreign Corporations in the Federal Courts, 56 Col.L.Rev. 394 (1956).

In Perkins v. Benguet Consol. Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, the Supreme Court afforded lower courts some guidance as to what factors might be considered in determining whether a corporation was doing business within the state, e. g., directors' meetings, business correspondence, bank accounts, payment of salaries. Id. at page 445, 72 S.Ct. 413.

 A sufficient number of events, transactions and occurrences have taken place in New York so that the requirement of minimal contact with the jurisdiction is satisfied. These have been set out above. The fact that the charter party or other contracts were not finally executed in New York is irrelevant for it is not necessary that the business done be that of completing contracts.[3] Assuming that the charter party was executed in California, the fact that the action on which the suit is based took place out-

side of the state has no bearing on the question now before the Court. Danzig v. Virgin Isle Hotel, Inc., D.C.S.D.N.Y. 1957, 23 F.R.D. 316, 318.

 What contacts with the jurisdiction are necessary to find that a foreign corporation is doing business will vary according to the activity of the corporation. Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 1930, 45 F.2d 139, 142. In New York it has been held that where a corporation appears to be doing business nowhere, then any jurisdiction may appropriately provide a forum in which a suit may be brought and service will be proper. Fikaris v. Atlantic Oil Carriers, Ltd., Sup.Ct.1955, 138 N.Y.S.2d 896. A foreign corporation may not avoid service of process by relative universal inactivity.[4] Its contacts must be considered in view of what business the corporation as a whole does. In the case at bar Panama was an inactive corporation. The requirement of minimal contacts is clearly satisfied.

 But in addition the Court must consider and balance the inconveniences. It is necessary to find that there is no imbalance of equities against the defendant and that it is not unreasonable to force the foreign corporation to defend an action in this jurisdiction. The principle which has evolved is, in fact, one of fairness. Lone Star Package Car Co. v. Baltimore & Ohio R. R. Co., 5 Cir., 1954, 212 F.2d 147, 155; Rayco Mfg. Co. v. Chicopee Mfg. Corp., D.C.S.D.N.Y.1957, 148 F.Supp. 588, 590; Anderson v. British Overseas Airways Corp., D.C.S.D. N.Y.1956, 144 F.Supp. 543, 545.

 The respondent's officers reside in New York; the charter party was negotiated in New York; Panama has re-

3. Even where the defendant's agents lacked such authority, the defendant was susceptible to service. Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926.

4. Cf., Hutchinson v. Chase & Gilbert, Inc., supra, where Judge Learned Hand said: "The shareholders, officers and agents are not individually the corporation, and do not carry it with them in all their le-

gal transactions. It is only when engaged upon its affairs that they can be said to represent it, and we can see no qualitative distinction between one part of its doings and another, so they carry out the common plan. If we are to attribute locality to it at all, it must be equally present wherever any part of its work goes on, as much in the little as in the great." 45 F.2d 141.

ceived ample notice of the action. In this particular situation an additional argument, though one which is not necessary to this opinion, is that there is not another forum available within the United States. Panama has no offices and conducts no business in California or in any other state. Insofar as it does business at all, a fair preponderance of that activity takes place in New York. Panama does business in New York and the balance of the equities leads to the conclusion that Panama should be called upon to defend the action in New York. The service was proper and the motion to vacate service and dismiss the libel is denied.

So ordered.