Albert WAHL and Minnie Wahl,
Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS,
INC., Middle East Airlines and Scandi-
navian Airlines Systems, Defendants.

Ralph H. HOPP, individually and as next
friend of Thomas Hopp and Susan
Hopp, Minors, and Dorothy G. Hopp,
Plaintiffs,

v.

MIDDLE EAST AIRLINES and Pan
American World Airways, Inc.,
Defendants.

Alex N. DRAGNICH, individually and as
next friend and guardian of George
Steven Dragnich, a Minor, Adele J.
Dragnich and Alix Sandra Dragnich,
Plaintiffs,

v.

MIDDLE EAST AIRLINES and Pan
American World Airways, Inc.,
Defendants.

United States District Court
S. D. New York.
March 4, 1964.

Theodore E. Wolcott, New York City,
for plaintiffs.

Symmers, Fish & Warner, New York
City, for defendant Middle East Air-
lines.

BONSAL, District Judge.

These are three wrongful death actions
brought by American citizens residing in
the United States as survivors of Amer-
ican citizens who, while fare-paying pas-
sengers on an airplane owned and op-
erated by defendant Middle East Air-

lines (MEA) were killed on or about February 1, 1963 when the MEA plane collided with a Turkish Government Air Force Plane near Ankara, Turkey.

Defendant MEA has moved, pursuant to Rule 12 of the Federal Rules of Civil Procedure, for an order dismissing the actions as to the defendant MEA, or, in the alternative, quashing the service of summons on said defendant on the grounds: (1) that it is a corporation organized and existing under the laws of Lebanon and is not subject to service of process within the State of New York or the Southern District of New York; (2) that summons was not served on any officer, director or managing agent of the defendant nor on any other agent authorized or designated by law to receive service of process on the defendant's behalf and (3) *forum non conveniens.*

Service of the summonses and complaints was made on Mr. Labib Majdalani at his offices at 680 Fifth Avenue, New York, N. Y. on November 27, 1963. Mr. Majdalani describes himself as Sales Manager, North and South America, for MEA, with offices located at 680 Fifth Avenue, New York City.

MEA is a Lebanese corporation with its principal place of business in Beirut, Lebanon, and operates in the Middle East, Europe and Africa. MEA's time tables list its sales offices, including an office at 680 Fifth Avenue, and a similar listing appears in the "Official Airline Guide".

Prior to the accident here involved, MEA on November 12, 1961 entered into a general sales agency agreement with Pan American World Airways, Inc., which agreement became effective January 1, 1962. According to Mr. Majdalani, the purpose of this agreement was to "service and promote the sales of Middle East Airlines on travel which originates within the United States", since some of MEA's business consists of passengers whose travel originates within the United States on the aircraft of other airline companies and subsequently involves segments of travel on MEA's planes. Mr. Majdalani further states that his duties in the United States are to provide liaison between Pan American and MEA in connection with the agreement, but that neither he nor any other employee of MEA makes any sales in the United States on behalf of MEA. It appears from the aforesaid agreement that such sales are made by Pan American as general sales agent for MEA, Pan American agreeing to "perform such services as may be appropriate to promote passenger, mail, express and cargo traffic over the lines of MEA and, in cooperation with MEA, to arrange for transportation of passengers, baggage, mail, express and cargo over such lines." Each of these functions is detailed at length in the agreement.

It is not denied that at the time of the accident, the activities carried on in the United States under the aforesaid general sales agency agreement, and by Mr. Majdalani as "Sales Manager, North and South America", were of a continuing and substantial nature and were for the purpose of developing passenger and freight business for MEA. Therefore, the test is whether these activities meet the test of "minimum contacts with this country and district to warrant the assertion of the federal judicial power over the controversies to the extent that under traditional notions of fair play they ought to be personally amenable to that judicial power". Maryland for Use of Mitchell v. Capital Airlines, Inc., D.C., 199 F.Supp. 335, 337; Lawson v. Pan American World Airways and Panair do Brasil, 30 Misc.2d 274, 216 N.Y.S.2d 549.

█ In the view of the Court, the minimum contact test has been amply met under the facts in this case and, indeed, it would be offensive to our notions of fair play to put these plaintiffs, as American citizens, to the expense of pursuing their remedy in Lebanon where MEA's principal office is located, or in Turkey where the accident occurred. MEA having solicited American business in the manner herein described, should be held to answer here for any legitimate

consequences of such activity. MEA has by its activities subjected itself to the jurisdiction of this Court, and service on Mr. Majdalani was valid under Rule 4(d) (3) as he meets the test of Managing or General Agent of the business being conducted within this District by MEA.

■ Defendant MEA further contends that the actions should be dismissed on the ground of *forum non conveniens*. It is true that the accident took place in Turkey and that presumably the persons knowledgeable as to the circumstances of the accident reside in or about that country. On the other hand, a very substantial burden would be imposed on the plaintiffs by requiring them to bring their actions in Turkey or in Lebanon. Moreover, since plaintiffs will have the burden of proving their case, the defendant MEA is certainly under no greater hardship than the plaintiffs in defending the actions here, the forum in which the plaintiffs had a right to seek relief.

Defendant's motion is denied.

It is so ordered.

## ON MOTION FOR REARGUMENT

Defendant Middle East Airlines (MEA) moves for reargument of its motions under Fed.R.Civ.P. 12 to dismiss the present actions or to quash service of process as to it. The original motions were denied in a memorandum decision dated January 28, 1964. The motions for reargument are granted solely to consider MEA's contention, which was not raised on the original motions, that the assertion of jurisdiction by this Court over MEA in these actions constitutes an unconstitutional burden on commerce

with foreign nations under the Constitution, Art. I, Section 8, cl. 3.[1] Upon reargument the Court adheres to its original determination.

■ An action against a foreign corporation in a State court may constitute an unconstitutional burden on commerce. See Davis v. Farmers Cooperative Equity Co., 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996 (1923). But while such an action in this Court may burden commerce, the burden cannot be an unconstitutional one under the commerce clause, since the commerce clause is a limitation upon state and not upon federal power.[2]

■ This Court need not determine before it entertains the present actions under its diversity jurisdiction whether the actions would have been barred as an unconstitutional burden upon commerce with foreign nations if the actions had been brought in a New York court. Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963) requires this Court to refer to New York law in a diversity action to determine the amenability to service or process of a foreign corporation, and to decline to assert jurisdiction over a foreign corporation if that corporation is not amenable to service of process under New York law. Arrowsmith is inapplicable here, however, for several reasons.

Arrowsmith stressed that state law with respect to the amenability to service of process of a foreign corporation embodies affirmative state policies. The inability of a state to entertain an action which is an unconstitutional burden on commerce is a limitation upon its ju-

1. "The Congress shall have Power * * * [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes * * *"

2. Cooke v. Kilgore Mfg. Co., 105 F.Supp. 733, 738 (N.D.Ohio 1952); Ferguson v. Ford Motor Co., 77 F.Supp. 425, 434 (S. D.N.Y.1948); Brown v. Canadian Pacific Ry. Co., 25 F.Supp. 566 (W.D.N.Y. 1938); cf. Moss v. Atlantic Coast Line Ry. Co., 157 F.2d 1005 (2d Cir. 1946), cert. denied, 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286 (1947); see Hart & Weschler, The Federal Courts and The Federal System 961 (1953); but cf. Jablonski v. Southern Pac. Co., 76 F.Supp. 1022 (S.D.N.Y.1948); Overstreet v. Canadian Pacific Airlines, 152 F.Supp. 838 (S.D.N.Y.1957); Zuber v. Penna. Ry. Co., 82 F.Supp. 670 (N.D.Ga.1949).

risdiction which results not from affirmative state policy but from a conflict with federal power. For a federal court to impose this limitation upon itself would serve no state interest, and indeed might constitute an abdication of the federal power over commerce, since the jurisdiction of this Court is conferred upon it by Congress under the Constitution.

The defendant corporation in Arrowsmith was a foreign corporation suable in the state of its domicile and elsewhere in the United States, while the defendant here, MEA, is an alien corporation, not otherwise suable in the United States.

Defendant's motions are denied.

It is so ordered.