ELEANOR BRYANT, Respondent, v. FINNISH NATIONAL AIRLINE, Appellant.

First Department, October 22, 1964.

*Douglas B. Bowring* of counsel (*Haight, Gardner, Poor & Havens,* attorneys), for appellant.

*Joseph R. Apfel* of counsel (*Daniel Leeds,* attorney), for respondent.

STEVENS, J.  Plaintiff instituted action to recover damages for personal injuries received October 12, 1962, at Orly Airport, Paris, France, which were allegedly caused by the negligence of the defendant.  Defendant moved for an order pursuant to CPLR 3211 (subd. [a], par. 8) to dismiss the complaint on the ground that the court had no jurisdiction over the person of defendant.  By order entered February 14, 1964, the motion was denied and defendant appeals therefrom.

The facts are relatively simple.  Plaintiff, an air hostess in the employ of Trans World Airlines (TWA) claims that she was knocked down and injured by a baggage cart " blown and thrown forcibly " against her caused by an excessive air blast of one of defendant's aircraft which was proceeding on Ramp Area Parking Spot D. 2, at the airfield.  Plaintiff asserts she was legally standing on Ramp Area Parking Spot D. 4.  There is no claim that defendant's plane was illegally on Spot D. 2, nor any claim that defendant was responsible for the position of the cart.

Plaintiff served a summons and complaint in New York upon one Pentti Rosenberg, the agency and interline manager of Finnair (Aero O/Y), a foreign corporation, sued herein as Finnish National Airline (herein Finnair).  The question to be resolved is whether jurisdiction of the defendant was obtained as a result of such service.

CPLR 301 provides: " A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  The words " as might have been exercised heretofore " " permits the courts to develop prior con-

cepts used in New York without the limitations of statutory language." (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 301.10.) "Exercise of judicial power by the state through its courts requires the satisfaction of requirements which fall under three heads: subject matter, basis, and service. * * * Defects in connection with the second and third [i.e., basis and service] are reached by objections based upon 'lack of jurisdiction of the person of the defendant' (CPLR 3211 (a) (8) or analogous objections to jurisdiction in *in rem* or *quasi in rem* actions (CPLR 3211 (a) (9))." (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 301.01.)

Under section 224 of the General Corporation Law (now Business Corporation Law, § 1314, subd. [a]), "[a]n action against a foreign corporation may be maintained by a resident of the state * * * for any cause of action." Plaintiff, a New York resident, claims as her basis for arguing that the courts acquired jurisdiction of the defendant, that defendant is doing business in the State and service was made in the prescribed manner.

Personal service upon a foreign corporation shall be made by delivering the summons " to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service " (CPLR 311, subd. 1). " A statute which points out how personal service of process may be made upon a defendant reasonably seems to be considering a case where a litigant can be made a defendant legally in our courts " (*Dollar Co.* v. *Canadian Car & Foundry Co.*, 220 N. Y. 270, 275).

The broad general rule laid down in the past was that to justify service of process upon a foreign corporation it must be shown that such corporation does a substantial part of its main business in the State (*Holzer* v. *Dodge Bros.*, 233 N. Y. 216, 221) or that the foreign " corporation transacts, with a fair measure of continuity and regularity, a reasonable amount of its business within this Commonwealth " (*Brocia* v. *Franklin Plan Corp.*, 235 App. Div. 421, 422). Now we speak of " systematic, regular and permanent " activities of the foreign corporation (*Joseph* v. *Litke*, 13 A D 2d 736, 737). As Mr. Justice VALENTE pointed out: " The trend in the decisions of the United States Supreme Court * * * has been toward expanding the area in which a State may exercise jurisdiction over a foreign corporation. * * * In *International Shoe* [*International Shoe Co.* v. *Washington*, 326 U. S. 310] the flexible standard adopted by the court for in personam jurisdiction over a foreign corporation was whether the corporation had

certain ' minimum contacts ' with the State such that the maintenance of the suit did not offend ' traditional notions of fair play and substantial justice '." (*Simonson* v. *International Bank,* 16 A D 2d 55, 57, affd. 14 N Y 2d 281.) But " [t]he *International Shoe* case * * * merely developed the doctrine that a State may extend the jurisdiction of its courts to encompass actions against a nonresident with respect to matters arising from significant acts of a nonresident in the State " (BREITEL, J., *Fremay* v. *Modern Plastic Corp.,* 15 A D 2d 235, 238). In other words the privilege to conduct certain activities within a State may carry with it the obligation to respond in the courts of that State, when the obligation sought to be enforced arises out of or is connected with the activities conducted within the State. (*International Shoe Co.* v. *Washington, supra.*)

The accident in the case before us did not arise from any " significant act " done by defendant within the State. We must therefore resolve whether there is presence of the defendant by reason of its doing business here, or the existence of such minimum contacts " that maintenance of the suit would not offend ' traditional notions of fair play and substantial justice ' " (*Matter of La Belle Creole Int.* v. *Attorney-General,* 10 N Y 2d 192, 197, citing cases). " Each case must be decided on its own facts having in mind the nature of the action or proceeding involved " (*ibid.,* p. 197).

The defendant is a foreign corporation organized under the laws of Finland, with its principal operating base, its head executive and administrative offices located in Helsinki, Finland, and is not registered in the United States. None of its stockholders, directors or officers are citizens or residents of the United States and defendant has not qualified to do business in the State of New York. All of Finnair's flights begin and end outside of the United States. It operates no aircraft within the United States and, according to Rosenberg, the office in New York does not sell tickets even for its own flights and receives no payment of fares for defendant's flights at its New York office. Defendant maintains a one-and-a-half room office at 10 East 40th Street, New York, staffed with three full-time and four part-time employees, none of whom is an officer or director of defendant. Its principal function is to receive from international air carriers or travel agencies reservations for travel on Finnair in Europe which it transmits to defendant's space control office in Europe. Upon occasion the New York office will transmit information concerning a reservation from the international air carrier or travel agency to defendant's

space control office in Europe and relay the confirmation or reply, when received, to such airline or agency. The New York office does some information and publicity work for defendant, and places a certain amount of advertising regarding Finnair's European services in connection with its publicity work. None of the New York office employees has authority to bind the defendant and contracts in connection with such office activities must be sent to the office in Helsinki for approval. Finnair maintains a bank account in which, according to Rosenberg, the average balance is less than $2,000 and out of which is paid the salaries of the employees, the rent and normal operating expenses of the New York office.

As the term " doing business " is used in reference to foreign corporations, it " relates to the ordinary business which the corporation was organized to do " (*Kline Bros. & Co.* v. *German Union Fire Ins. Co.,* 147 App. Div. 790, 795, affd. 210 N. Y. 534). It is not the occasional contact or simple collateral activity which is included. For example, section 218 of the General Corporation Law, requires of a foreign corporation doing business in this State, as a prerequisite to the maintenance of any action upon a contract made in this State, that it obtain a certificate of authority. This provision is designed to afford protection to our own corporations from unfair competition of foreign corporations, and to put domestic corporations " upon a comparatively equal footing with those of foreign corporations coming in here to do business " (*Angldile Computing Scale Co.* v. *Gladstone,* 164 App. Div. 370, 374). " But the making of a single sale, or the making of a series of sales, through a mere sales agent, by means of orders directed to the foreign corporation in its own State, where the goods are delivered to a common carrier of that State, under the terms of the contract, is not doing business in the State of New York within the meaning of that language as used in the statute " (*ibid.,* p. 375). " The ' doing business ' * * * is the exercising of its corporate franchises; the maintaining of a place of business within the State in the sense that the corporations organized and doing business under the laws of this State maintain such places of business " (*ibid.,* p. 373).

Despite the *International Shoe Co.* and *McGee* cases (*International Shoe Co.* v. *Washington,* 326 U. S. 310; *McGee* v. *International Life Ins. Co.,* 355 U. S. 220, in which an isolated act, the insurance contract, had a substantial connection with California and California permitted suit against the insurer, a foreign corporation, on the insurance contract) " the settled rule as to the extent or exercise of our jurisdiction in this State

has not been changed" (*Ames* v. *Senco Prods.*, 1 A D 2d 658). "[T]he applicable test as to whether defendant corporation does business within the State of New York is the classic 'presence' test, as found in the leading cases (e.g., *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259)." (*Fremay* v. *Modern Plastic Corp.*, 15 A D 2d 235, 240; *Simonson* v. *International Bank*, 16 A D 2d 55, affd. 14 N Y 2d 281.)

CPLR 301 by its language permits, but does not require, a broadening of the concept of "doing business", and of what constitutes regular, systematic or continuous activity within the State. When the courts reach out to conclude there is "presence" or to find such substantiality of contacts as to reasonably support a determination of "presence", the contacts or activities in support of such finding should bear a direct relation to the State or to the cause of action or injury complained of (cf. *International Business Mach. Corp.* v. *Barrett Div. Allied Chem. & Dye Corp.*, 16 A D 2d 487).

An isolated advertisement of solicitation even when coupled with the customary business of correspondent banks is not enough (*Mirabella* v. *Banco Ind. Argentina*, 38 Misc 2d 128, 135). But when coupled with additional business activities which are related to its operative or financial structure it may be found that the corporation is doing business so as to confer jurisdiction (*Elish* v. *St. Louis Southwestern Ry. Co.*, 305 N. Y. 267). However, it must be shown that enough is done within the State by such foreign corporation that the court may say "the defendant 'is here'" (*Berner* v. *United Airlines*, 3 A D 2d 9, 13, affd. 3 N Y 2d 1003).

In the case before us defendant's New York office cannot sell tickets or receive moneys, it does not solicit ticket sales or plan trips abroad (cf. *Benware* v. *Acme Chem. Co.*, 284 App. Div. 760), it does not maintain a staff, substantial or otherwise, with power or authority to affect defendant's operative structure or even its economic structure (except perhaps indirectly and minimally), and the cause of action did not arise out of and is not even remotely connected with the activities of defendant in this country or State. Of course it is the cumulative significance of the activities of the defendant which are to be considered in determining if the defendant is "here" (cf. *Zucker* v. *Baker*, 35 Misc 2d 841; *Harmony Center* v. *Railway Agency*, 35 Misc 2d 18) and not isolated activities.

Since plaintiff is a resident of New York the fact that the accident happened in France would not prevent this court from exercising jurisdiction if a proper basis for service were shown (*De La Bouillerie* v. *De Vienne*, 300 N. Y. 60). Plaintiff, how-

ever, has failed to show that defendant is doing business in the State so as to permit our courts to exercise jurisdiction over it. Here the contacts of defendant with New York are more or less incidental. The accident complained of did not occur here. This would exclude any application of CPLR 302 (subd. [a], par. 2). While "[t]he phrase of paragraph 1 [CPLR 302], 'transacts any business within the state,' is much less restrictive than the 'doing business' concept of the present case law" (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.06), it is indicated that the wrong must be connected with or flow from such business transacted in this State. That is not this case, for the activity or alleged wrong is not in any way connected with defendant's activities in New York (cf. *International Shoe Co.* v. *Washington, supra*). Even when viewed in terms of balance and convenience, the equities do not favor plaintiff. The accident happened in Europe, presumably the witnesses, if any, are in Europe, the books and records are there, plaintiff presumably will experience no hardship in suing there (cf. *Fuss* v. *French Nat. R. R.* (35 Misc 2d 680, affd. 17 A D 2d 941) and there seems no reason why we should make a strained interpretation of the law. To extend jurisdiction to defendant under the facts and circumstances is unwarranted and cannot be sustained.

The order appealed from should be reversed on the law, the motion to dismiss the complaint should be granted, with costs to appellant.

EAGER, J. (dissenting). I dissent from the determination of this court to dismiss this action. In any event, an adherence to due process requires that the matter should be remanded for a hearing.

I agree that CPLR 302 (subd. [a], par. 1) is not applicable where, as here, the cause of action did not arise from the business transacted by the defendant within the State. Nevertheless, if this defendant is "doing business" in the State, this court has acquired jurisdiction and this motion to dismiss the complaint for lack of jurisdiction must be denied. CPLR 301 continues the power of the courts of New York to exercise jurisdiction over a foreign corporation where it does business in the State. If it is "doing business" here, it is immaterial that the plaintiff's cause of action did not originate from the business transacted in New York. (*Perkins* v. *Benguet Min. Co.*, 342 U. S. 437; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 268; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 301.14.) "[T]he mere fact that the action arose outside of the State is not a sufficient ground on which to rest the closing of the doors

of our courts to one of our residents ". (*Fuss* v. *French Nat. R. R.,* 35 Misc 2d 680, 683, affd. 17 A D 2d 941.)

If a foreign corporation is here, it may be sued here. Historically, the power of a State court to assume jurisdiction to render judgment in personam against a defendant depends upon the presence of the defendant within the territorial jurisdiction of the court. (*International Shoe Co.* v. *Washington,* 326 U. S. 310, 316.) If the defendant is a foreign country corporation, its " presence " within a State can be manifested only by the activities which are carried on here in its behalf by its authorized agents. (*International Shoe Co.* v. *Washington, supra,* p. 316.) The test of " presence " is met where the foreign corporation is engaged in " doing business " here systematically and regularly, and with a fair measure of permanence and continuity (*Tauza* v. *Susquehanna Coal Co., supra,* p. 267). " Continuity of action from a permanent locale is essential " (*Sterling Novelty Corp.* v. *Frank & Hirsch Distr. Co.,* 299 N. Y. 208, 210).

In light of the foregoing, it appears that the defendant in this action, a foreign airline corporation, has unquestionably come " here " to carry on business with a " fair measure of permanence and continuity " from a " permanent locale "; or, at least, there is an issue in this regard which may only be resolved after a hearing. The defendant came into New York City, which may be properly designated as the air center of the world, to participate fully in the very substantial air travel business originating here. That it is here permanently and continually transacts business here in this connection clearly appears. It has subleased, set up and occupies an office at 10 East 40th Street, New York, New York, under the supervision of an " agency and interline manager " and staffed by three full-time employees and four part-time employees. This office is listed in the Manhattan telephone directory and in the defendant's timetables issued here and abroad. The defendant locally maintains a bank account which is regularly supplied with funds from business receipts, and such funds are used here in its business affairs, namely, to pay the expenses of its local office, the salaries of employees here and the cost of advertising in the State. This office is used by the defendant in the regular and systematic promotion of business for its airline. The office serves as an " information and publicity function " center for the defendant, from which " a certain amount of advertising of the Finnair European services " is arranged and placed, and it is a focal point for reservations here for travel abroad on the defendant's airline. While it is true that air travel tickets are not sold directly by its employees in this office, a

prospective passenger, when making reservations, can apparently purchase the necessary tickets for use on defendant's lines, either in the same office from the Finnish National Travel Agency or in local offices of international air carriers.

The foregoing, in my opinion, demonstrates at least prima facie that the corporate activities of the defendant here are more than " casual or occasional, and [are] so systematic and regular as to manifest ' continuity of action from a permanent locale ' '' (*Elish* v. *St. Louis Southwestern Ry. Co.*, 305 N. Y. 267, 269). The defendant's activities extend far beyond the " occasional or casual " solicitation of reservations for airline travel on its lines. " [S]olicitation * * * plus some additional activities [here] are sufficient to render the corporation amenable to suit ''. (*International Shoe Co.* v. *Washington, supra,* p. 314.) And, recent cases in New York have required little in addition to solicitation to constitute presence here. (1 Weinstein-Korn-Miller, par. 301.16, citing cases; see, also, *Jaftex Corp.* v. *Randolph Mills, Inc.*, 282 F. 2d 508, 510, citing cases.)

There is no constitutional issue here. Upon the record, it does not appear that subjecting the defendant to suit here will offend due process requirements. " [D]ue process requires only that in order to subject a defendant to judgment *in personam* * * * he have certain minimum contacts with [the State] such that the maintenance of the suit does not offend ' traditional notions of fair play and substantial justice.' '' (*International Shoe Co.* v. *Washington, supra,* p. 316. See, also, *Simonson* v. *International Bank,* 14 N Y 2d 281, 286.) The due process requirements are fully met if, at the time of the service of the summons, the foreign corporation was " doing business " within the meaning of the tests as laid down by our decisional law. (See *Simonson* v. *International Bank, supra;* *Streifer* v. *Cabol Enterprises,* 35 Misc 2d 1049, affd. 19 A D 2d 948.) Of course, due process also requires that proper notice of the suit be given to a true agent of the defendant bearing such relationship to it as to justify the inference that notice given to the agent will be transmitted to it, but that point is not in issue here.

" The essence of the issue here, at the constitutional level, is * * * one of general fairness to the corporation " (*Perkins* v. *Benguet Min. Co.*, 342 U. S. 437, 445, *supra*). If this defendant, a foreign airline corporation, deliberately chooses to come and locate here in the " air center of the world " to promote and further its corporate airline activities, and, for that purpose, leases and establishes an office from which it conducts

business " so systematic and regular as to manifest a continuity of action from a permanent locale ", it is not unfair or unreasonable to hold that it has subjected itself to our laws. " [A] corporation which expends money, time, and effort extensively within a state, thereby exercising the privilege of dealing with its residents, may receive considerable economic benefit; when its activities are given protection by state law, it ill behooves the corporation to complain about appearing there to litigate." (*Blount* v. *Peerless Chem.* [*P. R.*], 316 F. 2d 695, 697.) Where, as here, " the minimum contact test has been amply met * * * it would be offensive to our notions of fair play to put " this plaintiff, an " American citizen[s], to the expense of pursuing [her] remedy " in a foreign country. (*Wahl* v. *Pan Amer. World Airways,* 227 F. Supp. 839, 840.)

Where a foreign corporation deliberately seeks to acquire the advantages of doing business here, it should assume the burden of abiding by our laws. It subjects itself to the statutory provision that " [a]n action * * * against a foreign corporation may be maintained by a resident of the state * * * for any cause of action ". (Business Corporation Law, § 1314.) By virtue thereof, a foreign corporation may be sued here by a resident here upon a cause of action arising outside the State or country. (*Matter of Banque de France* v. *Supreme Court,* 287 N. Y. 483, 486.)

If, as the defendant claims, this suit is an unreasonable burden or obstruction to commerce forbidden by the Constitution of the United States, that is another matter. (See *Matter of Banque de France* v. *Supreme Court, supra*; *Matter of Baltimore Mail S. S. Co.* v. *Fawcett,* 269 N. Y. 379, 385; *Fuss* v. *French National R. R., supra.*) When a foreign corporation is here " with permanence and continuity ", then, to hold that the State cannot unduly burden interstate or foreign commerce " is a long way from holding that the ordinary process of the courts may not reach [it] ". (*Tauza* v. *Susquehanna Coal Co., supra.*)

The residence of the plaintiff here " is a fact of high significance " in determining whether the undue burden doctrine should be applied. (*Fuss* v. *French Nat. R. R.,* 35 Misc 2d 680, affd. 17 A D 2d 941, *supra,* citing *International Milling Co.* v. *Columbia Co.,* 292 U. S. 511, 519, 520.) The fact that the injuries sustained by plaintiff occurred in a foreign country does not necessarily entitle this defendant to take refuge behind the defense of alleged undue burden on foreign commerce. (*Fuss* v. *French Nat. R. R., supra.*) Inasmuch as there is no proper factual showing in this record to support a claim of undue

burden on foreign commerce, then it may be proper to remand the matter for a hearing or, in the alternative, the defendant may present such claim by means of an affirmative defense; but it is not proper to dismiss the action.

In any event, in the interests of fairness and due process, this suit should not be automatically dismissed without affording the plaintiff the benefit of a hearing upon relevant issues. Plaintiff is entitled to an opportunity to show fully: (1) The nature and extent of the air-traffic solicitation, advertising, and other business conducted by the defendant through its office here (it may very well be that a very substantial part of its airline business originates in this office, in office space shared with the Finnish Air Travel Agency or in local offices of international air carriers). (2) The nature of its relations with the Finnish Air Travel Agency from which the defendant subleases its office space (the use of such agency and local offices of international air carriers in connection with the sale of tickets for travel on defendant's airlines will be very pertinent). (See, e.g., *Berner* v. *United Airlines*, 3 A D 2d 9; *Lawson* v. *Pan Amer. World Airways*, 30 Misc 2d 274; *Wahl* v. *Pan Amer. World Airways*, 227 F. Supp. 839, *supra*.) (3) The measure of permanency with which the defendant's office is set up in the City of New York, including terms of its sublease, the terms of employment contracts, and the authority of its "full-time" employees. In fact, to deprive the plaintiff of the opportunity to a hearing upon the relevant issues " offends traditional notions of fair play and substantial justice ". As noted aforesaid, a resident of this State is especially accorded by statute the right to sue the defendant here. (Business Corporation Law, § 1314.) " One of the most important attributes of residence in this State is the availability of our courts " (*Fuss* v. *French Nat. R. R.*, *supra*, p. 682).

The trend of decisional law reveals an " expanding concept of local jurisdiction over foreign corporations ". (*Rondinelli* v. *Chicago, Rock·Is. & Pacific R. R. Co.*, 5 A D 2d 842, citing cases.) The dismissal of this action not only disregards such trend but, in my opinion, is a step back from the broadening and liberal approach inherent in CPLR provisions relating to jurisdiction over foreign corporations.

BREITEL, J. P., VALENTE and McNALLY, JJ., concur with STEVENS, J.; EAGER, J., dissents in opinion.

Order, entered on February 14, 1964, reversed, on the law, with $30 costs and disbursements to the appellant, and the motion to dismiss the complaint granted, with $10 costs.