**Frances Louise SCOTT, as Executrix of
the Estate of William Anthony Scott,
Deceased, Libelant,**

v.

**MIDDLE EAST AIRLINES CO., S.A.,
Respondent.**

United States District Court
S. D. New York.

Feb. 26, 1965.

Speiser, Shumate, Geoghan & Law, New York City, for libelant; Charles F. Krause, New York City, of counsel.

Symmers, Fish & Warner, New York City, Proctors for respondent.

PALMIERI, District Judge.

This is a motion brought by the libelant for an order granting leave to file an amended libel and for an order overruling the respondent's exceptions to the libel.

The libelant is the executrix of the estate of William Anthony Scott who died in a crash of one of the respondent's planes en route from Beirut, Lebanon, to Dhahran, Saudi Arabia. The action is brought under the Death on the High Seas Act, 46 U.S.C. § 761 et seq., and more particularly § 764.[1]

The respondent's sixth exception to the libel was based on the libelant's failure to properly allege the foreign law on which the action was based. Iafrate v. Compagnie Generale Transatlantique, 106 F.Supp. 619, 622 (S.D.N.Y.1952). The libelant now agrees with the respondent citing Bergeron v. Koninklijke Luchtvaart Maatschappij, N.V., 188 F.Supp. 594 (S.D.N.Y.1960), for the proposition that Lebanese law is the applicable law, and hence proffers the amended libel. This amendment sufficiently pleads the foreign law, and it is allowed.

The respondent's fifth exception to the libel is based on the libelant's failure to comply with Section 160 of the New York Decedent Estate Law, McKinney's Consol.Laws, c. 13. Although this Court is far from agreeing with the respondent that the libelant must comply with Section 160, Iafrate v. Compagnie Generale Transatlantique, supra, 106 F.Supp. at 622, the question need not be decided, for the libelant has represented to the Court that she would in fact comply with that section.

There remain four exceptions which constitute the heart of this dispute. The

---

1. Section 764 provides:

Rights of action given by laws of foreign countries

"Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding."

first three allege that the respondent is not amenable to process within this state and that service was improper. The fourth exception alleges that in any event this district is an inconvenient forum for the trial of this cause.

After hearing oral argument, decision was reserved pending the deposition of Mr. Labib Majdalani, Sales Manager, North and South America, of respondent Middle East Airlines (MEA), the person upon whom service was effected.[2] This deposition has now been completed and is before the Court.

Recently this respondent urged the same contentions in a suit arising out of a similar air crash. Wahl v. Pan American World Airways, Inc., 227 F.Supp. 839 (S.D.N.Y.1964). Judge Bonsal of this Court ruled that MEA was amenable to process here and refused to dismiss the suit on the ground of *forum non conveniens.*

Normally, it would suffice to simply cite Judge Bonsal's decision as dispositive of this motion, but the respondent has raised two contentions which it says distinguish the Wahl case. First, MEA argues that the Wahl decision is grounded on the theory that the deceased passengers, of whom the plaintiffs were the survivors, were Americans who had purchased their tickets in America. Presumably this means that Judge Bonsal applied the New York long-arm statute, C.P.L.R. § 302(a) (1), and not a more general "doing business" test. C.P.L.R. § 301.

Second, respondent argues that since the Wahl decision, the New York law has been clarified by the Appellate Division in the case of Bryant v. Finnish Nat'l Airline, 22 A.D.2d 16, 253 N.Y.S.2d 215 (1964). This case indicates, says the respondent, that the Wahl decision was wrong and that it should be held here that MEA is not subject, as a matter of law, to personal jurisdiction in this state. These two points will be discussed in inverse order.

Threshold questions are presented before the effect of the Bryant case can be considered.

It has been assumed that the test of amenability to suit in this case is the well-known "doing business" within the state test. The assumption is not that easy to make. At issue is the jurisdictional power of a federal court in admiralty, not the jurisdictional power of a state court. The test of "doing business" and its liberalization (the minimum contacts test) derived from cases which were concerned with the constitutional limits imposed by the Fourteenth Amendment on the states in the exercise of their jurisdiction. See e. g., Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878); First Flight Co. v. National Carloading Corp., 209 F.Supp. 730, 734 (E.D.Tenn.1962); Green, Federal Jurisdiction in Personam of Corporations and Due Process, 14 Vand.L.Rev. 967 (1961). Logically, these cases do not apply to federal jurisdiction, especially in federal question cases.[3] First Flight Co. v. National Carloading Corp., supra at 736–740. See also the Green article, supra; Hart & Wechsler, The Federal Courts and the Federal System, 960 (1953). However, the requirement that a defendant corporation have "minimum contacts" with the state in order to be subject to suit has long been applied for various reasons [4]—many unstated—in the federal courts even where

---

2. See Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 323 (2d Cir. 1964).

3. Cf. 15 U.S.C. §§ 5, 25 (antitrust acts); 28 U.S.C. § 2361 (interpleader); Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 442, 66 S.Ct. 242, 90 L.Ed. 185 (1946); Wahl v. Pan American World Airways, Inc., supra, 227 F.Supp.

at 841–842. These citations all indicate there is not necessarily a constitutional limit imposed on the federal courts that a corporation be "doing business" in the particular state in which the court is sitting.

4. See First Flight Co. v. National Carloading Corp., supra 209 F.Supp. at 736.

**4**

the suit is under the original jurisdiction of the federal courts, and even where the defendant is an alien corporation. See e. g., People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918) (suit brought under the Sherman Act); Barrow S. S. Co. v. Kane, 170 U.S. 100, 111, 18 S.Ct. 526, 42 L.Ed. 964 (1898); Arrowsmith v. United Press Int'l, 320 F.2d 219 (2d Cir. 1963) (diversity jurisdiction); Arpad Szabo v. Smedvig Tankrederi, S. A., 95 F.Supp. 519 (S.D.N.Y.1951) (suit in admiralty under Jones Act); Paragon Oil Co. v. Panama Refining & Petrochemical Co., 192 F.Supp. 259 (S.D.N.Y.1961). Cf. Polizzi v. Cowles Magazines, Inc., 345 U. S. 663, 666–667, 73 S.Ct. 900, 97 L.Ed. 1331 (1953).[5]

■ Given the array of precedents in this area, this Court cannot take it upon itself to change the law, as did Judge Wilson in the First Flight case—no mean feat for a district judge.[6] See Judge Friendly's reminder in Arrowsmith, 320 F.2d at page 225 note 5. Thus, in order to acquire jurisdiction over the respondent it must be found that the respondent has sufficient ties not merely with the United States but with the state of the forum to make jurisdiction over it consistent with "our traditional conception of fair play and substantial justice." International Shoe Co. v. Washington, su-

pra, 326 U.S. at 320, 66 S.Ct. at 160. There is, furthermore, an additional reason for not abandoning this test here. MEA is a Lebanese corporation and, unlike an American corporation, there is the possibility that it is not "present" in the United States at all. Thus, it is not simply a question of in which state shall the respondent be sued but whether it should be sued in the United States at all. In such a case there should certainly be required a finding that MEA has the necessary contacts with the United States to allow suit and, for the reasons noted, with New York as well.[7] Of course, a finding of the latter would necessarily mean a finding of the former.

■ Since the accident here did not arise out of the activities of MEA in this state, the appropriate test is "doing business", and not the more liberal single-act or long-arm test [8] which has spawned such state acts as C.P.L.R. § 302(a) (1). Cf. Hanson v. Denckla, supra, 357 U.S. at 251, 78 S.Ct. 1228; Seawind Compania, S. A. v. Crescent Line, Inc., 320 F.2d 580, 583 (2d Cir. 1963).

■ Having crossed this first threshold, the Court is faced with a second preliminary question. Is this Court obligated to apply state law to determine whether MEA is doing business, or should a federal test control? The respondent citing Arrowsmith v. United

5. In Lone Star Package Car Co. v. Baltimore & O. R. R., Co., 212 F.2d 147 (5th Cir. 1954), however, the Court held that in a federal question case, the question was governed "simply by basic principles of fairness," p. 155, and apparently did not deem it necessary that the defendant corporation be "doing business" in the state.

6. If it were held that service would be valid on MEA whether or not it was "doing business" here, the same or at least a very similar question could then be raised with respect to MEA's "doing business" here for purposes of venue, if MEA were a United States corporation. 28 U.S.C. § 1391(c). Cf. Ronson Art Metal Works, Inc. v. Brown & Bigelow, Inc., 104 F.Supp. 716, 723 (S.D.N.Y. 1952); Hart & Wechsler, supra at 961. But cf. Polizzi v. Cowles Magazines,

Inc., supra. Since, however MEA is an alien corporation, § 1391(c) is inapplicable. Barrow S.S. Co. v. Kane, supra; Green article supra at p. 977 n. 66; but cf. Paragon Oil Co. v. Panama Refining & Petrochemical Co., supra.

7. Some countries will take jurisdiction over an alien corporation merely on the basis of the plaintiff's nationality. Code Civil art. 14 (Fr. 53d ed. Dalloz 1954); Le Foyer v. Dulac, Cour d'Appel de Paris (4e chambre), June 29, 1949, [1949] Gazette du Palais (2d Sem.) 353 (Fr.); cf. International Corp. v. Besser Mfg. Co., 1 K.B. 488 (C.A.1950); Katz & Brewster, International Transactions & Relations 203 (1960).

8. See McGee v. International Life Ins. Co., 355 U.S. 200, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

Press Int'l, supra, argues that state law governs. As noted, however, jurisdiction in Arrowsmith was based on diversity, while here it is based on admiralty. As a matter of fact, this action is within the exclusive jurisdiction of the federal court, Devlin v. Flying Tiger Lines, Inc., 220 F.Supp. 924 (S.D.N.Y.1963), even though New York state courts have exercised jurisdiction in Death on the High Seas Act cases. See e. g., Ledet v. United Aircraft Corp., 10 N.Y.2d 258, 219 N.Y.S.2d 245, 176 N.E.2d 820 (1961). Arrowsmith, then, is not automatically dispositive of the question here. Judge Friendly, writing for the majority, made the following statement:

"We express no opinion whether a 'federal standard' may govern jurisdiction over foreign corporations in federal question litigation * * *. Suffice it to say that the considerations favoring the overriding of state policy would be far more persuasive than in an ordinary diversity suit." 320 F.2d p. 228 n. 9.

Cf. Seawind Compania, S. A. v. Crescent Line, Inc., supra, where the Court (including Judge Friendly) did not so much as mention the possibility of state law as controlling. Also cf. United States v. Cia Naviera Continental, S.A., 178 F. Supp. 561 (S.D.N.Y.1959). See also Friendly, In Praise of Erie, 39 N.Y.U.L. Rev. 383, 404–405 (1964).

In Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953), the Court held that Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), was "irrelevant" in admiralty. 345 U.S. p. 651, 73 S.Ct. 914. As in that case, the issue here is not an integral part of a state-created right. In point of fact, the right here is created purely by federal and Lebanese law.

 Although it may be true that in some cases the Erie doctrine may have application in admiralty, see Bell v. Tug Shrike, 332 F.2d 330, 332 (4th Cir. 1964), Black, 13 Mo.B.J. 173, 175 (1942); but cf. Pope & Talbot, Inc. v. Hawn, 346 U.S.

406, 409–410, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Friendly, In Praise of Erie, supra, it does not in a case such as this where there is at stake no state-created cause of action but merely the question of the admiralty court's jurisdictional power. See Pope & Talbot, Inc. v. Hawn, supra; Lone Star Package Car Co. v. Baltimore & O. R. R. Co., supra, 212 F.2d at 154–155; Bar's Leaks Western, Inc. v. Pollock, 148 F.Supp. 710, 713 (N.D.Cal. 1957). Rather than approach the problem with the *a priori* that state law should apply unless overcome by some strong federal policy, as was done in the Arrowsmith diversity case, the presumption in a federal question case should be the reverse: federal law should govern unless perhaps some overriding reason requires the contrary. No such reason is discernible here. Taking jurisdiction will not deter foreign corporations from entering New York because the state already has C.P.L.R. § 302(a) (1), a sword of Damocles. It is merely fortuitous that Mr. Scott bought his ticket and began his flight in Lebanon rather than in New York.

Since there are numerous cases delineating the contours of constitutionally permissible *in personam* jurisdiction, e. g., Hanson v. Denckla, supra, there are federal rules to which an admiralty court can turn for guidance. See Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2d Cir. 1960). But cf. Arrowsmith v. United Press Int'l, supra, 320 F.2d at 225. (In the latter, Judge Friendly distinguished the First Flight case, supra, which approved a "federal standard" on the ground that a federal question was involved. 320 F.2d p. 224 n. 4. So here.) Thus, there is no reason to adopt or defer to state law as was done, for example, in De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 2d Cir., 341 F.2d 50 (2d Cir. 1965); Bell v. Tug Shrike, supra.

■ Under the test so described, respondent MEA is amenable to process in this district and the case should not be dismissed.

But even if this Court is wrong in ruling that state law does not govern here, jurisdiction should nevertheless be taken despite the Bryant case. First, since that case is under appeal, the adjudication cannot be deemed to be final. Moreover, since the case seems to be inconsistent with prior New York law [9] and to be swimming against the stream of the current approach to jurisdictional problems, it may be reversed.

■ Also, the facts of this case reveal greater activities of MEA than of Finnish National Airline in New York. In addition to the facts set forth in Wahl (the agency agreement of MEA with Pan American must be emphasized),[10] the deposition of Mr. Majdalani has revealed the following points. As far back as 1956, MEA undertook the promotion and sale in the United States of transportation on MEA. The New York office, headed by Mr. Labib Majdalani, was the chief of MEA's North American offices which included offices in San Francisco and Chicago. Other sales managers, a tour manager and secretaries were hired through the New York office for MEA.

The respondent's sales in this hemisphere in 1963 represented approximately 4½% of MEA's total passenger sales with a little over 2% of the passenger revenue coming from New York alone. Mr. Majdalani also performed other services for MEA such as forwarding payment for customers' baggage damage claims.

Jurisdiction over MEA in this Court is proper and the motion to overrule the respondent's exception on this point is granted.

The respondent's contention that the Wahl decision rested on the theory that the plaintiff's contracts in that case were made in the United States does not appear to be correct. Even if it were, however, MEA is still doing sufficient business here to meet a stricter jurisdictional standard.

■ The respondent's contention that Mr. Majdalani is not a general agent for purposes of service must likewise fail.[11] Mr. Majdalani's activities have already been summarized. He is "an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." He certainly knows what he must do when served with papers. American Football League v. National Football League, 27 F.R.D. 264, 269 (D.Md.1961).

9. Rondinelli v. Chicago, R. I. & P. R. R. Co., 5 A.D.2d 842, 170 N.Y.S.2d 947 1958); Lawson v. Pan American World Airways, Inc., 30 Misc.2d 274, 216 N.Y.S. 2d 549 (Sup.Ct.1961). And see the cases cited in the dissent in Bryant.

10. The responsibilities undertaken by Pan American, as general sales agent in the United States, include the solicitation and sale of passenger, mail, express and cargo transportation, making arrangements on behalf of passengers for local transportation and hotel accommodations, furnishing advice and information on clearance, customs and immigration procedures, making local arrangements for advertising and publicity, maintaining and operating sales offices for the sale of transportation for passengers, express and cargo, assuring compliance with applicable governmental laws and regulations, checking baggage and handling the forwarding of same, receiving from shippers outgoing express and cargo, arranging connecting transportation and servicing all passenger and sales agents, including the remittance of refunds to passengers and the forwarding of commissions for sales.

11. In Seawind Compania, S. A. v. Crescent Lines, Inc., supra, the following was said 320 F.2d at p. 582:

"In Admiralty, as under Rule 4(d) of the Federal Rules of Civil Procedure, service upon a corporation may properly be effected by service upon 'an officer, a managing or general agent, or * * * any other agent authorized by appointment or by law to receive service of process.' Ashcraft-Wilkinson Co. v. Compania De Navegacion Geamar, S. R. L., 117 F.Supp. 162, 164 (S.D.N.Y.1953); Patel Cotton Co. v. Steel Traveler, 107 F.Supp. 191, 193 (S.D.N.Y.1952); 2 Benedict, Admiralty § 280 (6th ed. 1940)."

Nor should this action be dismissed on the grounds of *forum non conveniens*. See Wahl v. Pan American World Airways, Inc., supra 227 F.Supp. at 841.

The libelant's motions are granted as set forth in this opinion.

Submit order on notice.